IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO TRUJILLO,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANCISCO JACQUEZ, et. al.,<br><br>    Defendants.<br>    _____ / | No. C 10-5183 YGR (PR)<br><br>**ORDER (I) GRANTING DEFENDANT JACQUEZ'S MOTION TO DISMISS SUPERVISORY LIABILITY CLAIM AGAINST HIM; (II) DENYING REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (III) REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM; AND (IV) LIFTING THE STAY OF DISCOVERY**<br><br>(Docket no. 32) |

Plaintiff Mario Trujillo, a state prisoner currently incarcerated in Pelican Bay State Prison (PBSP), filed this civil rights action under 42 U.S.C. § 1983 against prison officials at PBSP for injuries incurred in 2009. Plaintiff alleged that Defendants PBSP Correctional Officers M. E. Polk and J. Reynoso used excessive force against him during an escort to a holding cell on February 16, 2009. Plaintiff also alleged that Defendants Correctional Officers N. White, J. Kay, C. Moua, A. Long, D. Hickman, and F. Avila witnessed the alleged incident of excessive force and failed to intervene. Finally, Plaintiff alleged that Defendant Warden Francisco Jacquez was liable for failing to properly investigate, discipline and train his subordinates, who caused Plaintiff harm.

In an Order dated February 10, 2011, the Court found Plaintiff's claims cognizable as violations of the Eighth Amendment's prohibition against cruel and unusual punishment and issued its Order of Service.[1] (Docket no. 3.)

Defendants have not filed an answer to the complaint. Instead, on May 23, 2011, Defendants

---

[1] The Court ordered service of the complaint and directed Defendants to respond. However, service was ineffective on Defendant Avila. In an Order dated April 1, 2011, the Court ordered Plaintiff to provide a current address for unserved Defendant Avila within thirty days. Thirty days passed, and Plaintiff did not respond to the Court's request. In an Order dated June 8, 2011, the Court dismissed *sua sponte* the claims against Defendant Avila without prejudice under Federal Rule of Civil Procedure 4(m), which states that if a complaint is not served within 120 days from the filing of the complaint, it may be dismissed without prejudice for failure of service. (June 8, 2011 Order at 1-2.)

Jacquez, Polk, White, Kay, Long, and Hickman filed a Waiver of Reply; Demand for Jury Trial under 42 U.S.C. § 1997e(g).[2] (Docket no. 26.) Thereafter, Defendants Moua and Reynoso filed a Waiver of Reply; Demand for Jury Trial. (Docket no. 44.)

On June 17, 2011, Defendants Jacquez, Polk, White, Kay, Moua, Long, and Hickman filed a motion for summary judgment on the grounds that there is no triable issue of material fact, that they are entitled to judgment as a matter of law, and that they are entitled to qualified immunity. Additionally, Defendant Jacquez argues that the supervisory liability claim against him should be dismissed. (Docket no. 32.) The Court construes Defendant Jacquez's argument as a motion to dismiss, which he is entitled to raise because, as mentioned above, he has not filed an answer.

On July 12, 2011, Defendant Reynoso filed a joinder to the motion for summary judgment. (Docket no. 45.)

On July 19, 2011, Plaintiff filed his opposition and a declaration in support of his opposition. (Docket nos. 48, 49.)

On August 2, 2011, Defendants filed their reply to Plaintiff's opposition. (Docket no. 59.)

Having read and considered the papers submitted by the parties, the Court hereby GRANTS Defendant Jacquez's motion to dismiss the supervisory liability claim against him. That claim is dismissed with leave to amend. The Court DENIES the remaining Defendants' motion for summary judgment with respect to Plaintiff's claim of excessive force, and it directs the remaining parties to engage in settlement proceedings. The Court also lifts the Stay of Discovery previously ordered on January 26, 2012.

**DISCUSSION**

I.  **Factual Background**

   A.  **Defendants' Version**

On February 16, 2009, Defendants Polk and Reynoso were performing their daily tour of the

---

[2] Section 1997e(g) allows a defendant to "waive the right of reply" in a civil rights action filed by a prisoner. *See* 42 U.S.C. § 1997e(g) ("Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law."). The "reply" referred to in Section 1997e(g) is equivalent to an answer to the complaint. Further, "[n]otwithstanding any other law or rule of procedure, such a waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed." *Id.*

2

1 Administrative Segregation Unit (ASU) Facility in PBSP and observed Plaintiff using an inmate-
2 manufactured string for "fishing," which is what inmates use to pass and introduce contraband and
3 other illegal materials from one cell to another. (Declaration of M. E. Polk, Docket no. 33 ("Polk
4 Decl.") ¶ 4.) They observed Plaintiff "fishing" in the "H" section from his cell in "G" section. (*Id*.)
5 They approached Plaintiff's cell door at approximately 10:50 a.m. (*Id*. ¶ 5.) Defendants Polk and
6 Reynoso saw Plaintiff standing in his cell with a bright light on. (*Id.*) Defendant Polk then ordered
7 Plaintiff to "cuff up" because a cell search was going to be conducted, but Plaintiff refused. (*Id.*)
8 Defendant Polk ordered Plaintiff to turn around and "cuff up" again, but Plaintiff again refused.
9 (*Id*.) Plaintiff then turned off the bright light in his cell, turned toward the back of the cell and then
10 pulled down his boxer shorts. (*Id*.) Defendant Polk ordered Plaintiff to turn the light back on and to
11 back up to the food port and cuff up, but Plaintiff refused yet again. (*Id*. ¶ 6.) Plaintiff then turned
12 around and switched his light on, at which point he appeared to be chewing on something. (*Id*.)
13 Plaintiff turned away from the cell door again and began adjusting the waist band on his boxer
14 shorts. (*Id*. ¶ 6.) Defendant Polk ordered Plaintiff again to "cuff up" and to stop stalling or chemical
15 agents would be used to gain his compliance. (*Id*. ¶ 7.) Defendant Polk then kicked the cell door
16 loudly, which caused Plaintiff to jump. (*Id*.) Plaintiff then seemed to swallow something forcibly
17 before he backed up to the cell door and submitted to being handcuffed. (*Id*.)

18 Thereafter, the control booth operator opened Plaintiff's cell door. (*Id*. ¶ 8.) Defendant Polk
19 placed his right hand on Plaintiff's left forearm and started backing Plaintiff out of the cell. (*Id*.)
20 After they exited the cell, Plaintiff pulled away from Defendant Polk and moved from side-to-side.
21 (*Id*.) Defendant Polk then placed his left hand on Plaintiff's left forearm and his right forearm
22 between Plaintiff's shoulders and physically pushed Plaintiff towards the wall opposite from the cell
23 door. (*Id*. ¶ 9.) Defendant Polk ordered Plaintiff to stop resisting. (*Id*.) Plaintiff stopped tensing his
24 body and relaxed enough for Defendant Polk and Reynoso to continue the escort towards the
25 rotunda. (*Id*.)

26 Upon reaching the rotunda, Plaintiff started to move side-to-side and tried to pull away from
27 Defendant Polk's grasp on his arm. (*Id*. ¶ 11.) Subsequently, Defendant Polk escorted Plaintiff over
28 to the wall next to the holding cell in the rotunda. (*Id*.) While facing the wall, Plaintiff lunged back

3

towards Defendants Polk and Reynoso. (*Id.*) Defendant Reynoso yelled at Plaintiff to stop resisting numerous times, but Plaintiff refused. (*Id.*) Defendant Reynoso then used his Monadnock expandable baton and struck Plaintiff's right bicep. (*Id.* at 12; Declaration of J. Reynoso, Docket no. 46 ("Reynoso Decl.") ¶ 8.) Plaintiff continued to resist and "push back" towards Defendant Polk. (*Id.*) Again, Defendant Reynoso ordered Plaintiff to stop resisting, but Plaintiff continued to resist with great physical force. (*Id.*) Defendant Reynoso then struck Plaintiff again with the baton, this time hitting Plaintiff in the middle of his right calf. (*Id.*) Plaintiff dropped to one knee. (*Id.* ¶ 9.) Defendant Polk grabbed Plaintiff's left arm and shoulder and used his body weight to force Plaintiff to the ground. (*Id.*) Both Plaintiff and Defendant Polk landed on the ground. (Polk Decl. ¶ 13.) Defendant Reynoso also fell to the ground as he assisted Defendant Polk in holding Plaintiff down. (Reynoso Decl. ¶ 9.) Defendant Reynoso landed on Plaintiff's right shoulder. (*Id.*)

While on the ground, Plaintiff continued to resist by moving his upper body. (Declaration of N. White, Docket no. 34 ("White Decl.") ¶ 8.) Defendant Polk's right hand was pinned underneath Plaintiff's jaw. (Polk Decl. ¶ 13.) Plaintiff then used his chin to grind Defendant Polk's hand into the concrete, which injured Defendant Polk's right ring finger and his little finger's knuckle. (*Id.*) Defendant Polk's little finger was bleeding. (*Id.*)

Defendants White and Kay assisted in subduing Plaintiff. (White Decl. ¶¶ 8, 9; Declaration of J. Kay, Docket no. 35 ("Kay Decl.") ¶¶ 9, 10.) Defendant White used his body weight and hands to hold Plaintiff down to the ground. (White Decl. ¶¶ 8, 9.) Defendant Kay placed leg restraints on Plaintiff. (Kay Decl. ¶¶ 9, 10.) Defendants White and Polk then assisted Plaintiff to his feet, turned him around, and placed him in a holding cell without further resistance. (Polk Decl. ¶ 14.)

Defendants claim that neither Defendant Long nor Defendant Hickman was present when the above incident occurred. (Declaration of A. Long, Docket no. 38 ("Long Decl.") ¶¶ 2, 3; Declaration of D. Hickman, Docket no. 37 ("Hickman Decl.") ¶¶ 3, 4.) Instead, they claim that Defendants Long and Hickman arrived at the location shortly after Plaintiff was subdued. (*Id.*)

Once Plaintiff was placed in the holding cell, Defendant Polk went to the medical clinic at PBSP where his hand was treated and bandaged. (Polk Decl. ¶ 15.) Defendant Polk sprained his left index and right ring fingers and suffered a cut on his right little finger as a result of the incident with

4

Plaintiff. (*Id*.) Defendant Polk was informed that there were teeth marks on his little finger, which was what caused it to bleed. (*Id*. ¶ 13.)

Plaintiff received the following injuries as a result of the incident: reddened area on his upper right breast area near his armpit; reddened swollen area on and below his right knee; reddened swollen area on the back of his head near his right ear; a superficial abrasion above his left eyebrow area; and a small scratch on the backside of his right arm opposite his elbow. (Kirschenbauer Decl. Ex. 2.) The facility nurse examined Plaintiff after the incident. (*Id*.) When asked if he had any comments, Plaintiff stated, "I wasn't resisting, they used excessive force. Can I get a copy of that?" (*Id*.)

On February 17, 2009, Defendant Polk issued Plaintiff a rules violation report as a result of the incident and charged him with battery on a peace officer. (Compl. Ex. B at 1.) At the disciplinary hearing on March 30, 2009, PBSP Senior Hearing Officer S. Manion found Plaintiff guilty of battery on a peace officer and assessed Plaintiff a 150 day credit forfeiture. (*Id*. at 6-7.)

### B.     Plaintiff's Version

The following allegations have been taken from Plaintiff's complaint and declaration in support of his opposition.

On February 16, 2009, at approximately 10:50 a.m., Defendants Polk, Reynoso, and Kay approached Plaintiff's cell. (Compl. at 15-16.) Plaintiff was the only occupant of that cell. (*Id.*) Defendant Polk ordered Plaintiff to "cuff up" because they wanted to search his cell. (*Id*.) Plaintiff initially refused the order and asked why. (*Id*.) Defendant Polk ordered Plaintiff to "cuff up" again and said they were going to conduct a search of his cell. (*Id.*) Plaintiff again refused and asked why. (*Id*.) After several minutes, Defendant Polk kicked Plaintiff's cell door and told him that chemical agents would be used to gain his compliance. (*Id*.) Plaintiff then complied with Defendant Polk's orders and backed up to the cell door and his hands were handcuffed behind his back. (*Id*.)

After Plaintiff exited his cell, Defendant Polk told him to wait by the wall parallel to the cell door. (*Id*. at 17.) Defendant Polk then pushed Plaintiff against that wall and yelled at him not to resist. (*Id*.) Plaintiff claims that he did not resist at that time. (Declaration of Plaintiff, Docket no. 49 ("Pl.'s Decl.") ¶ 7.) Subsequently, Defendants Polk, Reynoso, and Kay escorted Plaintiff down a

5

hallway and out into the rotunda of ASU-1. (Compl. at 17.)

While in the rotunda, Defendant Polk told Plaintiff to stop walking, while another officer unlocked a holding cell. (*Id*.) At that time, Defendant Polk yelled at Plaintiff to stop resisting and shoved Plaintiff against a metal food cart that was in the rotunda. (*Id*.) Defendant Polk then swung Plaintiff around, at which time Defendant Reynoso hit Plaintiff with a baton, striking the right side of his chest and then his right knee. (*Id*.) When Defendant Reynoso hit Plaintiff's knee, it caused Plaintiff to fall on the ground to one knee. (*Id*.) While on one knee, Defendant Polk took Plaintiff down to the ground in a prone position. (*Id*.) Defendant Polk then hit Plaintiff on the back of his head with either a fist or another object, which caused the front left side of Plaintiff's face to hit the concrete floor. (*Id*.) Defendant Polk then shoved Plaintiff's face on the ground, applied "extreme" pressure, and at the same time yelled, "when I tell you to cuff up, you cuff up." (*Id*.) Plaintiff was then placed in leg restraints by Defendant Kay and put in a holding cell. (*Id*.)

During these events, Plaintiff's hands were handcuffed behind his back, and he did not resist or threaten Defendants in any fashion. (*Id*. at 18; Pl.'s Decl. ¶ 12.)

Additionally, Defendants White, Kay, Moua, Long, and Hickman were standing a couple of feet away from the incident. However, they did not intervene to prevent the strikes and blows. (*Id*.; Pl.'s Decl. ¶ 11.)

To counter Defendants' claim that Defendants Long and Hickman were not present when the incident occurred, Plaintiff alleges that Defendants Long and Hickman were listed in an investigative employee report as officers who worked in the ASU-1 the day of the incident. (Compl. at 19.) The log sheet for the holding cell to which Plaintiff was taken showed Defendant Hickman as the person who searched that holding cell prior to Plaintiff being placed inside. (*Id*.) Defendant Hickman also marked the time as 10:55 a.m., which was approximately the time the incident took place, and the holding cell was approximately six feet away from where the incident occurred. (*Id*. at 20.) Additionally, Defendants Long and Hickman signed the holding cell log sheet that released Plaintiff from the cell. (*Id.*)

After the incident, a nurse examined Plaintiff and reported that Plaintiff suffered from abrasions and swelling around the following areas: above the left eye; on the back of the head; on

6

1 the right upper torso at the pectoral muscle; on the left elbow; and on the right knee. (Compl. at 18.)
2 Further, while Defendants Polk, Reynoso, and Kay alleged that Plaintiff was taken to contraband
3 surveillance watch because he ingested contraband before exiting his cell, Plaintiff disputes this
4 claim. (*Id.*) Plaintiff claims that he was never "fishing" for contraband on the day of the incident.
5 (Pl.'s Decl. ¶ 13.) Nor did Defendants locate any "fishing line" or contraband during the search of
6 Plaintiff or his cell. (*Id.*)

With respect to the disciplinary charge for battery on a peace officer, Plaintiff denies that he bit and crushed Defendant Polk's hand using his chin, causing it to bleed. (Compl. at 18; Pl.'s Decl. ¶ 16.) The nurse who examined Plaintiff did not find any blood on his mouth, teeth, or chin area. (*Id.*; Compl. at 21.) Instead, Plaintiff claims that Defendant Polk injured his own hand by punching Plaintiff in the back of the head. (Compl. at 21.)

Lastly, Plaintiff claims that Defendant Jacquez, as the warden of PBSP, failed to investigate, discipline and train all the other Defendants who caused Plaintiff harm. (*Id*. at 22.)

On January 26, 2012, pursuant to Defendants' request, the Court stayed discovery in this action.

## II. Analysis

### A. Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id*. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that

there is an absence of evidence to support the nonmoving party's case." *Id*.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.  However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."  *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248.  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  A court may not disregard direct evidence on the ground that no reasonable jury would believe it.  *See id.* (where the nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, the district court may not grant summary judgment to the moving party on the ground that direct evidence is unbelievable).  The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another.  *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004).  "By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury."  *Id.* But, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits

plaintiff's claim that there was little or no actual threat to innocent bystanders).

### B. Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of Defendants' motion for summary judgment, declarations have been filed by Defendants' Attorney Marisa Kirschenbauer as well as Defendants Polk, Reynoso, White, Kay, Moua, Long, and Hickman. Plaintiff verified his complaint filed on November 16, 2010 by signing it under "penalty of perjury." On July 13, 2011, Plaintiff submitted an opposition to Defendants' motion for summary judgment (docket no. 48) and a declaration in support of his opposition signed under "penalty of perjury" (docket no. 49). Therefore, for the purposes of this Order, the Court will treat Plaintiff's complaint and his declaration as affidavits under Rule 56 of the Federal Rules of Civil Procedure. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### C. Legal Claims

#### 1. Excessive Force Claim

##### a. Applicable Legal Standard

The Eighth Amendment governs the treatment a prisoner receives in prison and the conditions under which he is confined. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). A prison official violates the Eighth Amendment when two requirements are met:

> First, the deprivation alleged must be, objectively, 'sufficiently serious,' (citations omitted) a prison official's act or omission must result in the denial of the "minimal civilized measures of life's necessities," (citations omitted).
>
> ***
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." (Citations omitted.) To violate [the Eighth Amendment], a prison official must have a "sufficiently culpable state of mind." (Citations omitted.) In prison-condition cases that state of mind is one of "deliberate indifference" to inmate health or safety . . . ."

*Farmer v. Brennan*, 511 U.S. 824, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991),

9

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). Thus, the requirements consist of both an objective and a subjective test. *LeMaire*, 12 F.3d at 1451-52.

To further elaborate on the subjective test, the "wanton infliction of pain" against which the Eighth Amendment protects, requires that district courts evaluate the "differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* at 1452 (quoting *Whitley*, 475 U.S. at 320). "[W]antonness does not have a fixed meaning." *Id.* Thus, "whenever prison officials stand accused of using excessive physical force," the "core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 320-21; *LeMaire,* 12 F.3d at 1444; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). Evidence of the latter must exist to find an Eighth Amendment violation under those circumstances. By contrast, where an inmate alleges that the conditions of confinement inflict unnecessary suffering upon him, to establish "wantonness" the inmate must show only that prison officials were "deliberately indifferent" to the inmate's suffering. *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993); *see*, *e.g.*, *Farmer*, 511 U.S. at 837 (inmate safety); *Helling*, 509 U.S. at 32-33 (inmate health); *Wilson*, 501 U.S. at 302-03 (general conditions of confinement); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health). The Eighth Amendment does not require a specific intent to punish a specific individual. *Robins v. Meecham*, 60 F.3d 1436, 1439 (9th Cir. 1995).

Prison guards who fail to intercede when their fellow guards violate the constitutional rights of a plaintiff may also be held liable under the Eighth Amendment. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000); *Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004). "The constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). On the other hand, if a guard is not present during a constitutional violation, or if a violation happens so quickly that a guard had no "realistic

1 opportunity" to intercede, then the guard is not liable for failing to intercede. *Cunningham*, 229 F.3d
2 at 1290.

3 Here, Plaintiff alleges that Defendants Polk and Reynoso used excessive force themselves,
4 maliciously and sadistically, to cause him harm ("Primary Defendants"), and that Defendants White,
5 Kay, Moua, Long, and Hickman failed to intervene during the assault ("Secondary Defendants").
6 (Compl. at 22.)

### b. Analysis of Primary Defendants' Conduct

In assessing the liability of Defendants Polk and Reynoso, the Court turns to the first requirement of *Farmer*, 511 U.S. at 834, to analyze whether the force used was sufficiently serious. Plaintiff alleges that Defendant Polk assaulted him by pushing him against the wall, shoving him against a metal food cart, swinging him around, hitting the back of his head, and shoving his face on the ground while applying extreme pressure. (Compl. at 17.) Additionally, Plaintiff alleges that Defendant Reynoso assaulted him by striking him with a baton on the right side of his chest and on his right knee. (*Id*.)

While Defendants Polk and Reynoso were not required to use the least intrusive degree of force possible, they were required only to act within a reasonable range of conduct, i.e., by applying force "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6-7. Here, Defendants Polk and Reynoso claim to have used force as an appropriate response to Plaintiff's resistance. (Polk Decl. ¶¶ 7, 9, 12; Reynoso Decl. ¶¶ 9, 13.) However, Plaintiff denies that he resisted. (Compl. at 17; Pl.'s Decl. ¶ 12.) Even if the Primary Defendants believed that Plaintiff posed an immediate threat to their safety, this threat must be evaluated within the totality of the circumstances and balanced against the amount of force these Defendants applied. Plaintiff claims he complied with the Primary Defendants' orders by not resisting.

Here, two officers beat the same individual by applying physical force and force with the use of a baton. The incident did not result from a prison disruption or riot. The apparent circumstances giving rise to the encounter stem from a search of Plaintiff's cell for "fishing line" or "contraband," none of which was ever found. Nothing in the record compels the Court to reject Plaintiff's declarations whole-cloth. Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of disputed material fact exists as to whether the Primary Defendants' use of force on Plaintiff

11

was constitutionally excessive. *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In assessing the second requirement of *Farmer*, 511 U.S. at 834, the Court must analyze next whether the Primary Defendants possessed a sufficiently culpable state of mind. Here, Plaintiff claims that Defendant Polk used physical force against him and Defendant Reynoso hit him twice with a baton. (Compl. at 17.) Defendants Polk and Reynoso do not dispute this. (Polk Decl. ¶¶ 9, 12, 13, Reynoso Decl. ¶¶ 7-9.) However, Plaintiff further claims that Defendants Polk and Reynoso assaulted him while he was handcuffed, and that he did not resist them in any fashion nor did he provoke them at any time during the event. (Compl. at 17; Pl.'s Decl. ¶ 12.) In light of these additional facts, and viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether the Primary Defendants possessed a sufficiently culpable state of mind, i.e. whether the force was applied in a good-faith effort to maintain or restore discipline, or instead, applied maliciously and sadistically to cause harm.

Accordingly, summary judgment on this claim as against the Primary Defendants must be DENIED.

### c. Analysis of Secondary Defendants' Conduct

Based upon the foregoing, if Plaintiff has provided evidence to defeat summary judgment that the Primary Defendants' conduct amounted to an Eighth Amendment violation, then, similarly, the Secondary Defendants may be liable potentially for failure to intervene and prevent the constitutional violation. *See Koon*, 34 F.3d at 1447 n.25 (finding liability for failure to intervene where one officer witnesses another striking blows).

Defendants White, Kay, and Moua admit to being present at the time of the incident. (White Decl. ¶¶ 5-10; Kay Decl. ¶¶ 4-11; Moua Decl. ¶¶ 4-11.) Accordingly, they had the opportunity to intervene. For this, and the reasons set forth regarding the Primary Defendants' conduct, summary judgment as to Plaintiff's claim against Defendants White, Kay, and Moua is DENIED.

Defendants Hickman and Long contend that they had no opportunity to intervene to prevent the alleged acts of excessive force because they were not present when the incident occurred, but arrived shortly after Plaintiff was subdued. (Hickman Decl. ¶¶ 3-4; Long Decl. ¶¶ 2-3.) Plaintiff argues to the contrary. No dispute exists that defendants Hickman and Long were working in the

A.S.U. unit during the relevant time period. (*Id.*) The question is whether they actually witnessed the event so that they could have intervened. Plaintiff filed his complaint against them indicating, on information and belief, that these defendants "did not want to go along with the other defendants cover up and fabricate reports. They also did not want to go against their fellow officers so they denied being present, so they would not have to get involved and file reports." (Compl. ¶ 39.) This argument is coupled with the statement, made under penalty of perjury, that "[N.] White, J. Kay, C. Moua, F. Avila, A. Long and D. Hickman all stood by and watched . . . ." (Comp. at 3.) Further, Defendant Hickman concedes that he searched the holding cell at or about the exact same time of the event before the other officers placed Plaintiff inside, giving further credence to Plaintiff's contention that Defendant Hickman witnessed the event. Accordingly, a genuine issue of disputed material fact exists regarding Defendant Hickman's opportunity to intervene. His motion for summary judgment is DENIED.

With respect to Defendant Long, the record appears to be devoid of evidence placing Defendant Long at the actual event other than the competing declarations of the parties. Given that the Court granted Defendants' request to stay discovery, and the presumption in favor of denial, summary judgment in favor of Defendant Long would be premature. His motion for summary judgment is DENIED WITHOUT PREJUDICE to file a subsequent motion after further discovery is afforded the parties.

### d. **Alternative Ground: Qualified Immunity**

Defendants argue, in the alternative, that summary judgment is warranted because, as government officials, they are entitled to qualified immunity from Plaintiff's Eighth Amendment excessive force claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court considering a claim of

13

qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier* and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case). Where there is no clearly established law that certain conduct constitutes a constitutional violation, a defendant cannot be on notice that such conduct is unlawful. *Rodis v. County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009) (applying *Pearson* to find no clearly established right before evaluating whether there was a deprivation). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202.

The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis. *See Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003). Thus, a guard can act in violation of an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was a good faith effort to restore discipline. *See id.* at 692-93 (guard who shot passive, unarmed inmate standing near a fight between other unarmed inmates when no inmate was in danger of great bodily injury would inflict unnecessary and wanton pain, but was entitled to qualified immunity because a reasonable official standing where the guard was standing (i.e., in a tower 360 feet away from the disturbance) could perceive that both plaintiff and another inmate were kicking a third inmate and threatening him with serious injury or death and that the third inmate was unable to protect himself -- even if no kick was actually administered by plaintiff); *cf. Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).

Under *Saucier*, 533 U.S. at 201, a district court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* To determine whether a

14

defendant's conduct violated constitutional rights, the court should examine the facts in the light most favorable to the party asserting the injury. *Id.* If the court determines that a constitutional right has been violated, it then moves to the second step and asks whether the right was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02.

In applying the first prong of *Saucier*, this Court must determine whether there was a constitutional violation. Viewing the evidence in the light most favorable to Plaintiff, Defendants Polk's and Reynoso's actions did amount to an Eighth Amendment violation as Plaintiff has raised a triable issue of fact as to the excessiveness of the force used against him.

Applying the second prong of *Saucier*, this Court must determine whether the right violated was "clearly established." *Deorle v. Rutherford*, 272 F.3d 1272, 1287-87 (9th Cir. 2001). The law is unmistakable that, at the time of Defendants Polk's and Reynoso's actions, the use of excessive force by correctional officers on a prisoner -- who is not resisting -- was a violation of the Eighth Amendment. Furthermore, the case law at that time clearly required intervention by Defendants White, Kay, Moua, Long, and Hickman to prevent the use of excessive force, given the opportunity to do so. *See Jeffers*, 267 F.3d at 912-13 (applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). A reasonable officer could have believed that Defendants' actions -- using excessive force (applying physical force and striking an inmate with a baton) and failing to intervene -- were unlawful in light of clearly established law and the information that Defendants possessed at the time of the incident. *See Saucier*, 533 U.S. at 205.

Accordingly, Defendants Reynoso, Polk, White, Kay, Moua, Long, and Hickman are not entitled to qualified immunity as a matter of law with respect to Plaintiff's claim of excessive force. Their motion is DENIED on this ground.

### 2. **Supervisory Liability Claim**

Defendants have also moved to dismiss Plaintiff's supervisory liability claim against

Defendant Jacquez.³ They allege that claim should be dismissed because Plaintiff's "vague and conclusory allegations of supervisory liability against Defendant Jacquez do not allege that Defendant Jacquez had any direct involvement in the February 16, 2009 incident." (Mot. for Summ. J. at 13.) This Court agrees.

Plaintiff claims that because Defendant Jacquez is responsible for the operation of the prison and welfare of all the inmates as PBSP warden, he should be liable for his subordinates' alleged use of excessive force. This is a respondeat superior claim because Plaintiff seeks to hold Defendant Jacquez liable as the superior of the other Defendants, who Plaintiff claims violated his rights.

A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). In addition, liability may be imposed on an individual defendant under Section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of Section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *See id.* at 633. The inquiry into causation must be individualized and focused on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See id.* Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's deprivation of protected rights. *Id.* at 634. By contrast, respondeat superior is not a proper basis for Section 1983 liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Plaintiff has not alleged specific facts linking Defendant Jacquez's individual conduct to the cause of harm Plaintiff complains he suffered as alleged in his complaint. *See id.* at 633.

---

³ As mentioned above, Defendants have not filed an answer. *See* 42 U.S.C. § 1997e(g). Therefore, they are entitled to bring forth this motion to dismiss Plaintiff's supervisory liability claim against Defendant Jacquez.

16

Accordingly, the Court GRANTS Defendant Jacquez's motion to dismiss the supervisory liability claim against him. That claim is DISMISSED with leave to amend. Plaintiff may file an amendment to the complaint that states his claim with specificity, linking Defendant Jacquez's conduct to his claim of excessive force, as directed below.

## **CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. The Court GRANTS Defendant Jacquez's motion to dismiss the supervisory liability claim against him and DENIES the remaining Defendants' motion for summary judgment with respect to Plaintiff's claim of excessive force. (Docket no. 32.) The summary judgment motion of Defendant Long is DENIED without prejudice to file another motion after further discovery. All Defendants, other than Defendant Long, may not bring an additional motion for summary judgment without the express permission from the Court.

2. Plaintiff's supervisory liability claim against Defendant Jacquez is DISMISSED with leave to amend. Within **thirty (30) days** of the date of this Order Plaintiff may file an amended supervisory liability claim against Defendant Jacquez as set forth above in the Discussion Section II.C.(2) of this Order. **Plaintiff shall resubmit only that claim.** Plaintiff must clearly label the document an "Amendment to the Complaint," and write in the case number for this action, Case No. C 10-5183 YGR (PR). The failure to do so by the thirty-day deadline will result in the dismissal without prejudice of his supervisory liability claim against Defendant Jacquez.

3. This case has been pending for over a year and the events at issue occurred over three years ago. If the case must go to trial, even further delay in resolution will be incurred, as will expenses. A record already exists which includes evidence of internal investigations and detailed medical records of the injuries suffered. Having considered all of these factors, the Court finds that it is in the best interests of the parties and judicial efficiency to REFER this action to a Magistrate Judge for court-ordered settlement proceedings.

The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference. The Court finds that a referral is in order now that Plaintiff's excessive force claim has survived

1  summary judgment. Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a
2  settlement conference.

3        The conference shall take place within **ninety (90) days** of the date of this Order, or as soon
4  thereafter as is convenient to the magistrate judge's calendar. Magistrate Judge Vadas shall
5  coordinate a time and date for the conference with all interested parties and/or their representatives
6  and, within **ten (10) days** after the conclusion of the conference, file with the Court a report
7  regarding the conference.

8        The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Vadas.

9        4.    The Clerk shall send Plaintiff a blank civil rights form along with a copy of this
10 Order.

11       5.    The Stay of Discovery previously ordered on January 26, 2012 (docket no. 71) is
12 hereby lifted.

13       6.    This Order terminates Docket no. 32.

14       IT IS SO ORDERED.

15 DATED: March 15, 2012

16 **YVONNE GONZALEZ ROGERS**
   **UNITED STATES DISTRICT COURT JUDGE**