1

2

3

4                      IN THE UNITED STATES DISTRICT COURT

5                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

6   MARIO TRUJILLO,                           No. C 10-5183 YGR (PR)

7              Plaintiff,
                                              **ORDER (I) GRANTING DEFENDANT**
8                                             **JACQUEZ'S MOTION TO DISMISS**
       vs.                                    **SUPERVISORY LIABILITY CLAIM AGAINST**
9                                             **HIM; (II) DENYING REMAINING**
    FRANCISCO JACQUEZ, et. al.,               **DEFENDANTS' MOTION FOR SUMMARY**
10                                            **JUDGMENT; (III) REFERRING CASE TO PRO**
              Defendants.                     **SE PRISONER SETTLEMENT PROGRAM; AND**
11                                            **(IV) LIFTING THE STAY OF DISCOVERY**

12  _____/        (Docket no. 32)

13

14      Plaintiff Mario Trujillo, a state prisoner currently incarcerated in Pelican Bay State Prison

15  (PBSP), filed this civil rights action under 42 U.S.C. § 1983 against prison officials at PBSP for

16  injuries incurred in 2009.  Plaintiff alleged that Defendants PBSP Correctional Officers M. E. Polk

17  and J. Reynoso used excessive force against him during an escort to a holding cell on February 16,

    2009.  Plaintiff also alleged that Defendants Correctional Officers N. White, J. Kay, C. Moua, A.
18
    Long, D. Hickman, and F. Avila witnessed the alleged incident of excessive force and failed to
19
    intervene.  Finally, Plaintiff alleged that Defendant Warden Francisco Jacquez was liable for failing
20
    to properly investigate, discipline and train his subordinates, who caused Plaintiff harm.
21
        In an Order dated February 10, 2011, the Court found Plaintiff's claims cognizable as
22
    violations of the Eighth Amendment's prohibition against cruel and unusual punishment and issued
23
    its Order of Service.[1]  (Docket no. 3.)
24
        Defendants have not filed an answer to the complaint.  Instead, on May 23, 2011, Defendants
25

26  _____

27      [1] The Court ordered service of the complaint and directed Defendants to respond.  However,
    service was ineffective on Defendant Avila.  In an Order dated April 1, 2011, the Court ordered
    Plaintiff to provide a current address for unserved Defendant Avila within thirty days.  Thirty days
28  passed, and Plaintiff did not respond to the Court's request.  In an Order dated June 8, 2011, the
    Court dismissed *sua sponte* the claims against Defendant Avila without prejudice under Federal
    Rule of Civil Procedure 4(m), which states that if a complaint is not served within 120 days from the
    filing of the complaint, it may be dismissed without prejudice for failure of service.  (June 8, 2011
    Order at 1-2.)

*United States District Court*
For the Northern District of California

Jacquez, Polk, White, Kay, Long, and Hickman filed a Waiver of Reply; Demand for Jury Trial under 42 U.S.C. § 1997e(g).[2]  (Docket no. 26.)  Thereafter, Defendants Moua and Reynoso filed a Waiver of Reply; Demand for Jury Trial.  (Docket no. 44.)

On June 17, 2011, Defendants Jacquez, Polk, White, Kay, Moua, Long, and Hickman filed a motion for summary judgment on the grounds that there is no triable issue of material fact, that they are entitled to judgment as a matter of law, and that they are entitled to qualified immunity. Additionally, Defendant Jacquez argues that the supervisory liability claim against him should be dismissed.  (Docket no. 32.)  The Court construes Defendant Jacquez's argument as a motion to dismiss, which he is entitled to raise because, as mentioned above, he has not filed an answer.

On July 12, 2011, Defendant Reynoso filed a joinder to the motion for summary judgment. (Docket no. 45.)

On July 19, 2011, Plaintiff filed his opposition and a declaration in support of his opposition. (Docket nos. 48, 49.)

On August 2, 2011, Defendants filed their reply to Plaintiff's opposition.  (Docket no. 59.)

Having read and considered the papers submitted by the parties, the Court hereby GRANTS Defendant Jacquez's motion to dismiss the supervisory liability claim against him.  That claim is dismissed with leave to amend.  The Court DENIES the remaining Defendants' motion for summary judgment with respect to Plaintiff's claim of excessive force, and it directs the remaining parties to engage in settlement proceedings.  The Court also lifts the Stay of Discovery previously ordered on January 26, 2012.

## DISCUSSION

**I.      Factual Background**

   **A.      Defendants' Version**

On February 16, 2009, Defendants Polk and Reynoso were performing their daily tour of the

---

[2] Section 1997e(g) allows a defendant to "waive the right of reply" in a civil rights action filed by a prisoner.  *See* 42 U.S.C. § 1997e(g) ("Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law.").  The "reply" referred to in Section 1997e(g) is equivalent to an answer to the complaint.  Further, "[n]otwithstanding any other law or rule of procedure, such a waiver shall not constitute an admission of the allegations contained in the complaint.  No relief shall be granted to the plaintiff unless a reply has been filed." *Id.*

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Administrative Segregation Unit (ASU) Facility in PBSP and observed Plaintiff using an inmate-

2    manufactured string for "fishing," which is what inmates use to pass and introduce contraband and

3    other illegal materials from one cell to another. (Declaration of M. E. Polk, Docket no. 33 ("Polk

4    Decl.") ¶ 4.) They observed Plaintiff "fishing" in the "H" section from his cell in "G" section. (*Id.*)

5    They approached Plaintiff's cell door at approximately 10:50 a.m. (*Id.* ¶ 5.) Defendants Polk and

6    Reynoso saw Plaintiff standing in his cell with a bright light on. (*Id.*) Defendant Polk then ordered

7    Plaintiff to "cuff up" because a cell search was going to be conducted, but Plaintiff refused. (*Id.*)

8    Defendant Polk ordered Plaintiff to turn around and "cuff up" again, but Plaintiff again refused.

9    (*Id.*) Plaintiff then turned off the bright light in his cell, turned toward the back of the cell and then

10   pulled down his boxer shorts. (*Id.*) Defendant Polk ordered Plaintiff to turn the light back on and to

11   back up to the food port and cuff up, but Plaintiff refused yet again. (*Id.* ¶ 6.) Plaintiff then turned

12   around and switched his light on, at which point he appeared to be chewing on something. (*Id.*)

13   Plaintiff turned away from the cell door again and began adjusting the waist band on his boxer

14   shorts. (*Id.* ¶ 6.) Defendant Polk ordered Plaintiff again to "cuff up" and to stop stalling or chemical

15   agents would be used to gain his compliance. (*Id.* ¶ 7.) Defendant Polk then kicked the cell door

16   loudly, which caused Plaintiff to jump. (*Id.*) Plaintiff then seemed to swallow something forcibly

17   before he backed up to the cell door and submitted to being handcuffed. (*Id.*)

18          Thereafter, the control booth operator opened Plaintiff's cell door. (*Id.* ¶ 8.) Defendant Polk

19   placed his right hand on Plaintiff's left forearm and started backing Plaintiff out of the cell. (*Id.*)

20   After they exited the cell, Plaintiff pulled away from Defendant Polk and moved from side-to-side.

21   (*Id.*) Defendant Polk then placed his left hand on Plaintiff's left forearm and his right forearm

22   between Plaintiff's shoulders and physically pushed Plaintiff towards the wall opposite from the cell

23   door. (*Id.* ¶ 9.) Defendant Polk ordered Plaintiff to stop resisting. (*Id.*) Plaintiff stopped tensing his

24   body and relaxed enough for Defendant Polk and Reynoso to continue the escort towards the

25   rotunda. (*Id.*)

26          Upon reaching the rotunda, Plaintiff started to move side-to-side and tried to pull away from

27   Defendant Polk's grasp on his arm. (*Id.* ¶ 11.) Subsequently, Defendant Polk escorted Plaintiff over

28   to the wall next to the holding cell in the rotunda. (*Id.*) While facing the wall, Plaintiff lunged back

United States District Court
For the Northern District of California

1    towards Defendants Polk and Reynoso.  (*Id.*)  Defendant Reynoso yelled at Plaintiff to stop resisting

2    numerous times, but Plaintiff refused.  (*Id.*)  Defendant Reynoso then used his Monadnock

3    expandable baton and struck Plaintiff's right bicep.  (*Id.* at 12; Declaration of J. Reynoso, Docket no.

4    46 ("Reynoso Decl.") ¶ 8.)  Plaintiff continued to resist and "push back" towards Defendant Polk.

5    (*Id.*)  Again, Defendant Reynoso ordered Plaintiff to stop resisting, but Plaintiff continued to resist

6    with great physical force.  (*Id.*)  Defendant Reynoso then struck Plaintiff again with the baton, this

7    time hitting Plaintiff in the middle of his right calf.  (*Id.*)  Plaintiff dropped to one knee.  (*Id.* ¶ 9.)

8    Defendant Polk grabbed Plaintiff's left arm and shoulder and used his body weight to force Plaintiff

9    to the ground.  (*Id.*)  Both Plaintiff and Defendant Polk landed on the ground.  (Polk Decl. ¶ 13.)

10   Defendant Reynoso also fell to the ground as he assisted Defendant Polk in holding Plaintiff down.

11   (Reynoso Decl. ¶ 9.)  Defendant Reynoso landed on Plaintiff's right shoulder.  (*Id.*)

12        While on the ground, Plaintiff continued to resist by moving his upper body.  (Declaration of

13   N. White, Docket no. 34 ("White Decl.") ¶ 8.)  Defendant Polk's right hand was pinned underneath

14   Plaintiff's jaw.  (Polk Decl. ¶ 13.)  Plaintiff then used his chin to grind Defendant Polk's hand into

15   the concrete, which injured Defendant Polk's right ring finger and his little finger's knuckle.  (*Id.*)

16   Defendant Polk's little finger was bleeding.  (*Id.*)

17        Defendants White and Kay assisted in subduing Plaintiff.  (White Decl. ¶¶ 8, 9; Declaration

18   of J. Kay, Docket no. 35 ("Kay Decl.") ¶¶ 9, 10.)  Defendant White used his body weight and hands

19   to hold Plaintiff down to the ground.  (White Decl. ¶¶ 8, 9.)  Defendant Kay placed leg restraints on

20   Plaintiff.  (Kay Decl. ¶¶ 9, 10.)  Defendants White and Polk then assisted Plaintiff to his feet, turned

21   him around, and placed him in a holding cell without further resistance.  (Polk Decl. ¶ 14.)

22        Defendants claim that neither Defendant Long nor Defendant Hickman was present when the

23   above incident occurred.  (Declaration of A. Long, Docket no. 38 ("Long Decl.") ¶¶ 2, 3;

24   Declaration of D. Hickman, Docket no. 37 ("Hickman Decl.") ¶¶ 3, 4.)  Instead, they claim that

25   Defendants Long and Hickman arrived at the location shortly after Plaintiff was subdued.  (*Id.*)

26        Once Plaintiff was placed in the holding cell, Defendant Polk went to the medical clinic at

27   PBSP where his hand was treated and bandaged.  (Polk Decl. ¶ 15.)  Defendant Polk sprained his left

28   index and right ring fingers and suffered a cut on his right little finger as a result of the incident with

United States District Court
For the Northern District of California

1  Plaintiff. (*Id.*) Defendant Polk was informed that there were teeth marks on his little finger, which

2  was what caused it to bleed. (*Id.* ¶ 13.)

3       Plaintiff received the following injuries as a result of the incident:  reddened area on his

4  upper right breast area near his armpit; reddened swollen area on and below his right knee; reddened

5  swollen area on the back of his head near his right ear; a superficial abrasion above his left eyebrow

6  area; and a small scratch on the backside of his right arm opposite his elbow.  (Kirschenbauer Decl.

7  Ex. 2.)  The facility nurse examined Plaintiff after the incident.  (*Id.*)  When asked if he had any

8  comments, Plaintiff stated, "I wasn't resisting, they used excessive force.  Can I get a copy of that?"

9  (*Id.*)

10      On February 17, 2009, Defendant Polk issued Plaintiff a rules violation report as a result of

11  the incident and charged him with battery on a peace officer.  (Compl. Ex. B at 1.)  At the

12  disciplinary hearing on March 30, 2009, PBSP Senior Hearing Officer S. Manion found Plaintiff

13  guilty of battery on a peace officer and assessed Plaintiff a 150 day credit forfeiture.  (*Id.* at 6-7.)

14      **B.       Plaintiff's Version**

15      The following allegations have been taken from Plaintiff's complaint and declaration in

16  support of his opposition.

17      On February 16, 2009, at approximately 10:50 a.m., Defendants Polk, Reynoso, and Kay

18  approached Plaintiff's cell.  (Compl. at 15-16.)  Plaintiff was the only occupant of that cell.  (*Id.*)

19  Defendant Polk ordered Plaintiff to "cuff up" because they wanted to search his cell.  (*Id.*)  Plaintiff

20  initially refused the order and asked why.  (*Id.*)  Defendant Polk ordered Plaintiff to "cuff up" again

21  and said they were going to conduct a search of his cell.  (*Id.*)  Plaintiff again refused and asked

22  why.  (*Id.*)  After several minutes, Defendant Polk kicked Plaintiff's cell door and told him that

23  chemical agents would be used to gain his compliance.  (*Id.*)  Plaintiff then complied with Defendant

24  Polk's orders and backed up to the cell door and his hands were handcuffed behind his back.  (*Id.*)

25      After Plaintiff exited his cell, Defendant Polk told him to wait by the wall parallel to the cell

26  door.  (*Id.* at 17.)  Defendant Polk then pushed Plaintiff against that wall and yelled at him not to

27  resist.  (*Id.*)  Plaintiff claims that he did not resist at that time.  (Declaration of Plaintiff, Docket no.

28  49 ("Pl.'s Decl.") ¶ 7.)  Subsequently, Defendants Polk, Reynoso, and Kay escorted Plaintiff down a

United States District Court

For the Northern District of California

1   hallway and out into the rotunda of ASU-1.  (Compl. at 17.)

2       While in the rotunda, Defendant Polk told Plaintiff to stop walking, while another officer

3   unlocked a holding cell.  (*Id*.)  At that time, Defendant Polk yelled at Plaintiff to stop resisting and

4   shoved Plaintiff against a metal food cart that was in the rotunda.  (*Id*.)  Defendant Polk then swung

5   Plaintiff around, at which time Defendant Reynoso hit Plaintiff with a baton, striking the right side

6   of his chest and then his right knee.  (*Id*.)  When Defendant Reynoso hit Plaintiff's knee, it caused

7   Plaintiff to fall on the ground to one knee.  (*Id*.)  While on one knee, Defendant Polk took Plaintiff

8   down to the ground in a prone position.  (*Id*.)  Defendant Polk then hit Plaintiff on the back of his

9   head with either a fist or another object, which caused the front left side of Plaintiff's face to hit the

10  concrete floor.  (*Id*.)  Defendant Polk then shoved Plaintiff's face on the ground, applied "extreme"

11  pressure, and at the same time yelled, "when I tell you to cuff up, you cuff up."  (*Id*.)  Plaintiff was

12  then placed in leg restraints by Defendant Kay and put in a holding cell.  (*Id*.)

13      During these events, Plaintiff's hands were handcuffed behind his back, and he did not resist

14  or threaten Defendants in any fashion.  (*Id*. at 18; Pl.'s Decl. ¶ 12.)

15      Additionally, Defendants White, Kay, Moua, Long, and Hickman were standing a couple of

16  feet away from the incident.  However, they did not intervene to prevent the strikes and blows.  (*Id*.;

17  Pl.'s Decl. ¶ 11.)

18      To counter Defendants' claim that Defendants Long and Hickman were not present when the

19  incident occurred, Plaintiff alleges that Defendants Long and Hickman were listed in an

20  investigative employee report as officers who worked in the ASU-1 the day of the incident.  (Compl.

21  at 19.)  The log sheet for the holding cell to which Plaintiff was taken showed Defendant Hickman

22  as the person who searched that holding cell prior to Plaintiff being placed inside.  (*Id*.)  Defendant

23  Hickman also marked the time as 10:55 a.m., which was approximately the time the incident took

24  place, and the holding cell was approximately six feet away from where the incident occurred.  (*Id*.

25  at 20.)  Additionally, Defendants Long and Hickman signed the holding cell log sheet that released

26  Plaintiff from the cell.  (*Id.*)

27      After the incident, a nurse examined Plaintiff and reported that Plaintiff suffered from

28  abrasions and swelling around the following areas: above the left eye; on the back of the head; on

6

United States District Court
For the Northern District of California

1   the right upper torso at the pectoral muscle; on the left elbow; and on the right knee.  (Compl. at 18.)

2   Further, while Defendants Polk, Reynoso, and Kay alleged that Plaintiff was taken to contraband

3   surveillance watch because he ingested contraband before exiting his cell, Plaintiff disputes this

4   claim.  (*Id.*)  Plaintiff claims that he was never "fishing" for contraband on the day of the incident.

5   (Pl.'s Decl. ¶ 13.)  Nor did Defendants locate any "fishing line" or contraband during the search of

6   Plaintiff or his cell.  (*Id.*)

7          With respect to the disciplinary charge for battery on a peace officer,  Plaintiff denies that he

8   bit and crushed Defendant Polk's hand using his chin, causing it to bleed.  (Compl. at 18; Pl.'s Decl.

9   ¶ 16.)  The nurse who examined Plaintiff did not find any blood on his mouth, teeth, or chin area.

10  (*Id.*; Compl. at 21.)  Instead, Plaintiff claims that Defendant Polk injured his own hand by punching

11  Plaintiff in the back of the head.  (Compl. at 21.)

12         Lastly, Plaintiff claims that Defendant Jacquez, as the warden of PBSP, failed to investigate,

13  discipline and train all the other Defendants who caused Plaintiff harm.  (*Id.* at 22.)

14         On January 26, 2012, pursuant to Defendants' request, the Court stayed discovery in this

15  action.

16  **II.    Analysis**

17         **A.    Legal Standard for Summary Judgment**

18         Summary judgment is proper where the pleadings, discovery and affidavits show that there is

19  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

20  matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

21  case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact

22  is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

23  party.  *See id.*

24         The moving party for summary judgment bears the initial burden of identifying those

25  portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine

26  issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving

27  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

28  reasonable trier of fact could find other than for the moving party.  *Id.*  But on an issue for which the

opposing party will have the burden of proof at trial, the moving party need only point out "that

1   there is an absence of evidence to support the nonmoving party's case." *Id*.  If the evidence in

2   opposition to the motion is merely colorable, or is not significantly probative, summary judgment

3   may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.  However, "self-serving affidavits are

4   cognizable to establish a genuine issue of material fact so long as they state facts based on personal

5   knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir.

6   2001).

7        Once the moving party meets its initial burden, the nonmoving party must go beyond the

8   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

9   genuine issue for trial." Fed. R. Civ. P. 56(e).  A dispute about a material fact is "genuine" if the

10   evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Liberty

11   Lobby*, 477 U.S. at 248.  If the nonmoving party fails to make this showing, "the moving party is

12   entitled to a judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

13        At summary judgment, the judge must view the evidence in the light most favorable to the

14   nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the

15   nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party

16   with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  A court

17   may not disregard direct evidence on the ground that no reasonable jury would believe it.  *See id.*

18   (where the nonmoving party's direct evidence raises genuine issues of fact but is called into question

19   by other unsworn testimony, the district court may not grant summary judgment to the moving party

20   on the ground that direct evidence is unbelievable).  The district court may not resolve disputed

21   issues of material fact by crediting one party's version of events and ignoring another.  *Wall v.

22   County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004).  "By deciding to rely on the defendants'

23   statement of fact [in deciding a summary judgment motion], the district court became a jury." *Id.*

24   But, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the

25   record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

26   for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83

27   (2007) (police officer entitled to summary judgment based on qualified immunity in light of video

28   evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits

1    plaintiff's claim that there was little or no actual threat to innocent bystanders).

2        **B.   Evidence Considered**

3        A district court may only consider admissible evidence in ruling on a motion for summary

4    judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  In

5    support of Defendants' motion for summary judgment, declarations have been filed by Defendants'

6    Attorney Marisa Kirschenbauer as well as Defendants Polk, Reynoso, White, Kay, Moua, Long, and

7    Hickman.  Plaintiff verified his complaint filed on November 16, 2010 by signing it under "penalty

8    of perjury."  On July 13, 2011, Plaintiff submitted an opposition to Defendants' motion for summary

9    judgment (docket no. 48) and a declaration in support of his opposition signed under "penalty of

10   perjury" (docket no. 49).  Therefore, for the purposes of this Order, the Court will treat Plaintiff's

11   complaint and his declaration as affidavits under Rule 56 of the Federal Rules of Civil Procedure.

12   *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

13       **C.   Legal Claims**

14           **1.   Excessive Force Claim**

15               **a.   Applicable Legal Standard**

16           The Eighth Amendment governs the treatment a prisoner receives in prison

17   and the conditions under which he is confined.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  "After

18   incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual

19   punishment forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

20   (ellipsis in original) (internal quotation and citation omitted).  A prison official violates the Eighth

21   Amendment when two requirements are met:

22           First, the deprivation alleged must be, objectively, 'sufficiently serious,' (citations
         omitted) a prison official's act or omission must result in the denial of the "minimal
23           civilized measures of life's necessities," (citations omitted).

24                                    ***

25           The second requirement follows from the principle that "only the unnecessary and
         wanton infliction of pain implicates the Eighth Amendment."  (Citations omitted.)
26           To violate [the Eighth Amendment], a prison official must have a "sufficiently
         culpable state of mind."  (Citations omitted.)  In prison-condition cases that state of
27           mind is one of "deliberate indifference" to inmate health or safety . . . ."

28   *Farmer v. Brennan*, 511 U.S. 824, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991),

                                         9

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and *Helling v. McKinney*, 509 U.S. 25, 35 (1993));
*LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).  Thus, the requirements consist of both an
objective and a subjective test.  *LeMaire*, 12 F.3d at 1451-52.

　　　　To further elaborate on the subjective test, the "wanton infliction of pain" against which the
Eighth Amendment protects, requires that district courts evaluate the "differences in the kind of
conduct against which an Eighth Amendment objection is lodged."  *Id.* at 1452 (quoting *Whitley*,
475 U.S. at 320).  "[W]antonness does not have a fixed meaning."  *Id.*  Thus, "whenever prison
officials stand accused of using excessive physical force," the "core judicial inquiry is whether force
was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to
cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 320-21; *LeMaire,*
12 F.3d at 1444;  *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and
sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison
riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of
violence to prevent the riot).  Evidence of the latter must exist to find an Eighth Amendment
violation under those circumstances.  By contrast, where an inmate alleges that the conditions of
confinement inflict unnecessary suffering upon him, to establish "wantonness" the inmate must show
only that prison officials were "deliberately indifferent" to the inmate's suffering.  *Jordan v.
Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993); *see, e.g.*, *Farmer*, 511 U.S. at 837 (inmate safety);
*Helling*, 509 U.S. at 32-33 (inmate health); *Wilson*, 501 U.S. at 302-03 (general conditions of
confinement); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).  The Eighth Amendment
does not require a specific intent to punish a specific individual.  *Robins v. Meecham*, 60 F.3d 1436,
1439 (9th Cir. 1995).

　　　　Prison guards who fail to intercede when their fellow guards violate the constitutional rights
of a plaintiff may also be held liable under the Eighth Amendment.  *Cunningham v. Gates*, 229 F.3d
1271, 1289-90 (9th Cir. 2000); *Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004).  "The
constitutional right violated by the passive defendant is analytically the same as the right violated by
the person who strikes the blows."  *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994),
*rev'd on other grounds*, 518 U.S. 81 (1996).  On the other hand, if a guard is not present during a
constitutional violation, or if a violation happens so quickly that a guard had no "realistic

1 | opportunity" to intercede, then the guard is not liable for failing to intercede. *Cunningham*, 229 F.3d

2 | at 1290.

3 | Here, Plaintiff alleges that Defendants Polk and Reynoso used excessive force themselves,

4 | maliciously and sadistically, to cause him harm ("Primary Defendants"), and that Defendants White,

5 | Kay, Moua, Long, and Hickman failed to intervene during the assault ("Secondary Defendants").

6 | (Compl. at 22.)

7 | **b.   Analysis of Primary Defendants' Conduct**

8 | In assessing the liability of Defendants Polk and Reynoso, the Court turns to

9 | the first requirement of *Farmer*, 511 U.S. at 834, to analyze whether the force used was sufficiently

10 | serious. Plaintiff alleges that Defendant Polk assaulted him by pushing him against the wall,

11 | shoving him against a metal food cart, swinging him around, hitting the back of his head, and

12 | shoving his face on the ground while applying extreme pressure. (Compl. at 17.) Additionally,

13 | Plaintiff alleges that Defendant Reynoso assaulted him by striking him with a baton on the right side

14 | of his chest and on his right knee. (*Id.*)

15 | While Defendants Polk and Reynoso were not required to use the least intrusive degree of

16 | force possible, they were required only to act within a reasonable range of conduct, i.e., by applying

17 | force "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6-7. Here,

18 | Defendants Polk and Reynoso claim to have used force as an appropriate response to Plaintiff's

19 | resistance. (Polk Decl. ¶¶ 7, 9, 12; Reynoso Decl. ¶¶ 9, 13.) However, Plaintiff denies that he

20 | resisted. (Compl. at 17; Pl.'s Decl. ¶ 12.) Even if the Primary Defendants believed that Plaintiff

21 | posed an immediate threat to their safety, this threat must be evaluated within the totality of the

22 | circumstances and balanced against the amount of force these Defendants applied. Plaintiff claims

23 | he complied with the Primary Defendants' orders by not resisting.

24 | Here, two officers beat the same individual by applying physical force and force with the use

25 | of a baton. The incident did not result from a prison disruption or riot. The apparent circumstances

26 | giving rise to the encounter stem from a search of Plaintiff's cell for "fishing line" or "contraband,"

27 | none of which was ever found. Nothing in the record compels the Court to reject Plaintiff's

28 | declarations whole-cloth. Viewing the evidence in the light most favorable to Plaintiff, a genuine

29 | issue of disputed material fact exists as to whether the Primary Defendants' use of force on Plaintiff

11

**United States District Court**
For the Northern District of California

1    was constitutionally excessive. *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

2        In assessing the second requirement of *Farmer*, 511 U.S. at 834, the Court must analyze next

3    whether the Primary Defendants possessed a sufficiently culpable state of mind.  Here, Plaintiff

4    claims that Defendant Polk used physical force against him and Defendant Reynoso hit him twice

5    with a baton.  (Compl. at 17.)  Defendants Polk and Reynoso do not dispute this.  (Polk Decl. ¶¶ 9,

6    12, 13, Reynoso Decl. ¶¶ 7-9.)  However, Plaintiff further claims that Defendants Polk and Reynoso

7    assaulted him while he was handcuffed, and that he did not resist them in any fashion nor did he

8    provoke them at any time during the event.  (Compl. at 17; Pl.'s Decl. ¶ 12.)  In light of these

9    additional facts, and viewing the evidence in the light most favorable to Plaintiff, a genuine issue of

10   material fact exists as to whether the Primary Defendants possessed a sufficiently culpable state of

11   mind, i.e. whether the force was applied in a good-faith effort to maintain or restore discipline, or

12   instead, applied maliciously and sadistically to cause harm.

13       Accordingly, summary judgment on this claim as against the Primary Defendants must be

14   DENIED.

15                       **c.    Analysis of Secondary Defendants' Conduct**

16       Based upon the foregoing, if Plaintiff has provided evidence to defeat

17   summary judgment that the Primary Defendants' conduct amounted to an Eighth Amendment

18   violation, then, similarly, the Secondary Defendants may be liable potentially for failure to intervene

19   and prevent the constitutional violation. *See Koon*, 34 F.3d at 1447 n.25 (finding liability for failure

20   to intervene where one officer witnesses another striking blows).

21       Defendants White, Kay, and Moua admit to being present at the time of the incident.  (White

22   Decl. ¶¶ 5-10; Kay Decl. ¶¶ 4-11; Moua Decl. ¶¶ 4-11.)  Accordingly, they had the opportunity to

23   intervene.  For this, and the reasons set forth regarding the Primary Defendants' conduct, summary

24   judgment as to Plaintiff's claim against Defendants White, Kay, and Moua is DENIED.

25       Defendants Hickman and Long contend that they had no opportunity to intervene to prevent

26   the alleged acts of excessive force because they were not present when the incident occurred, but

27   arrived shortly after Plaintiff was subdued.  (Hickman Decl. ¶¶ 3-4; Long Decl. ¶¶ 2-3.)  Plaintiff

28   argues to the contrary.  No dispute exists that defendants Hickman and Long were working in the

United States District Court
For the Northern District of California

1   A.S.U. unit during the relevant time period.  (*Id.*)  The question is whether they actually witnessed

2   the event so that they could have intervened.  Plaintiff filed his complaint against them indicating,

3   on information and belief, that these defendants "did not want to go along with the other defendants

4   cover up and fabricate reports.  They also did not want to go against their fellow officers so they

5   denied being present, so they would not have to get involved and file reports."  (Compl. ¶ 39.)  This

6   argument is coupled with the statement, made under penalty of perjury, that "[N.] White, J. Kay, C.

7   Moua, F. Avila, A. Long and D. Hickman all stood by and watched . . . ."  (Comp. at 3.)  Further,

8   Defendant Hickman concedes that he searched the holding cell at or about the exact same time of the

9   event before the other officers placed Plaintiff inside, giving further credence to Plaintiff's

10  contention that Defendant Hickman witnessed the event.  Accordingly, a genuine issue of disputed

11  material fact exists regarding Defendant Hickman's opportunity to intervene.  His motion for

12  summary judgment is DENIED.

13          With respect to Defendant Long, the record appears to be devoid of evidence placing

14  Defendant Long at the actual event other than the competing declarations of the parties.  Given that

15  the Court granted Defendants' request to stay discovery, and the presumption in favor of denial,

16  summary judgment in favor of Defendant Long would be premature.  His motion for summary

17  judgment is DENIED WITHOUT PREJUDICE to file a subsequent motion after further discovery is

18  afforded the parties.

19                       **d.      Alternative Ground: Qualified Immunity**

20              Defendants argue, in the alternative, that summary judgment is warranted

21  because, as government officials, they are entitled to qualified immunity from Plaintiff's Eighth

22  Amendment excessive force claim.

23          The defense of qualified immunity protects "government officials . . . from liability for civil

24  damages insofar as their conduct does not violate clearly established statutory or constitutional

25  rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

26  (1982).  The threshold question in qualified immunity analysis is:  "Taken in the light most

27  favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

28  constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court considering a claim of

**United States District Court**
For the Northern District of California

1   qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual

2   constitutional right and whether such right was "clearly established."  *Pearson v. Callahan*, 555 U.S.

3   223, 236 (2009) (overruling the sequence of the two-part test that required determination of a

4   deprivation first and then whether such right was clearly established, as required by *Saucier* and

5   holding that court may exercise its discretion in deciding which prong to address first, in light of the

6   particular circumstances of each case).  Where there is no clearly established law that certain

7   conduct constitutes a constitutional violation, a defendant cannot be on notice that such conduct is

8   unlawful.  *Rodis v. County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009) (applying

9   *Pearson* to find no clearly established right before evaluating whether there was a deprivation).  The

10  relevant, dispositive inquiry in determining whether a right is clearly established is whether it would

11  be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

12  *Saucier*, 533 U.S. at 202.

13          The qualified immunity analysis is separate from the Eighth Amendment excessive force

14  analysis.  *See Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003).  Thus, a guard can act in

15  violation of an inmate's Eighth Amendment right but still be entitled to qualified immunity if a

16  reasonable officer in his position would have believed that his response was a good faith effort to

17  restore discipline.  *See id.* at 692-93 (guard who shot passive, unarmed inmate standing near a fight

18  between other unarmed inmates when no inmate was in danger of great bodily injury would inflict

19  unnecessary and wanton pain, but was entitled to qualified immunity because a reasonable official

20  standing where the guard was standing (i.e., in a tower 360 feet away from the disturbance) could

21  perceive that both plaintiff and another inmate were kicking a third inmate and threatening him with

22  serious injury or death and that the third inmate was unable to protect himself -- even if no kick was

23  actually administered by plaintiff); *cf. Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005)

24  (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a

25  prisoner who was on the ground and in handcuffs).

26          Under *Saucier*, 533 U.S. at 201, a district court must undertake a two-step analysis when a

27  defendant asserts qualified immunity in a motion for summary judgment.  The court first faces "this

28  threshold question: Taken in the light most favorable to the party asserting the injury, do the facts

    alleged show the officer's conduct violated a constitutional right?"  *Id.*  To determine whether a

1    defendant's conduct violated constitutional rights, the court should examine the facts in the light

2    most favorable to the party asserting the injury.  *Id.*  If the court determines that a constitutional right

3    has been violated, it then moves to the second step and asks whether the right was "clearly

4    established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the

5    situation he confronted."  *Id.* at 201-02.

6        In applying the first prong of *Saucier*, this Court must determine whether there was a

7    constitutional violation.  Viewing the evidence in the light most favorable to Plaintiff, Defendants

8    Polk's and Reynoso's actions did amount to an Eighth Amendment violation as Plaintiff has raised a

9    triable issue of fact as to the excessiveness of the force used against him.

10       Applying the second prong of *Saucier*, this Court must determine whether the right violated

11   was "clearly established."  *Deorle v. Rutherford*, 272 F.3d 1272, 1287-87 (9th Cir. 2001).  The law is

12   unmistakable that, at the time of Defendants Polk's and Reynoso's actions, the use of excessive force

13   by correctional officers on a prisoner -- who is not resisting -- was a violation of the Eighth

14   Amendment.  Furthermore, the case law at that time clearly required intervention by Defendants

15   White, Kay, Moua, Long, and Hickman to prevent the use of excessive force, given the opportunity

16   to do so.  *See Jeffers*, 267 F.3d at 912-13 (applying "deliberate indifference" standard to claim that

17   guards failed to act on rumors of violence to prevent the riot).  A reasonable officer could have

18   believed that Defendants' actions -- using excessive force (applying physical force and striking an

19   inmate with a baton) and failing to intervene -- were unlawful in light of clearly established law and

20   the information that Defendants possessed at the time of the incident.  *See Saucier*, 533 U.S. at 205.

21       Accordingly, Defendants Reynoso, Polk, White, Kay, Moua, Long, and Hickman are not

22   entitled to qualified immunity as a matter of law with respect to Plaintiff's claim of excessive force.

23   Their motion is DENIED on this ground.

24                    **2.    Supervisory Liability Claim**

25       Defendants have also moved to dismiss Plaintiff's supervisory liability claim against

26

27

28

                                              15

United States District Court
For the Northern District of California

1  Defendant Jacquez.[3]  They allege that claim should be dismissed because Plaintiff's "vague and

2  conclusory allegations of supervisory liability against Defendant Jacquez do not allege that

3  Defendant Jacquez had any direct involvement in the February 16, 2009 incident."  (Mot. for Summ.

4  J. at 13.)  This Court agrees.

5      Plaintiff claims that because Defendant Jacquez is responsible for the operation of the prison

6  and welfare of all the inmates as PBSP warden, he should be liable for his subordinates' alleged use

7  of excessive force.  This is a respondeat superior claim because Plaintiff seeks to hold Defendant

8  Jacquez liable as the superior of the other Defendants, who Plaintiff claims violated his rights.

9      A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement

10  in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's

11  wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435,

12  1446 (9th Cir. 1991) (en banc) (citation omitted).  In addition, liability may be imposed on an

13  individual defendant under Section 1983 if the plaintiff can show that the defendant proximately

14  caused the deprivation of a federally protected right.  *See Leer v. Murphy*, 844 F.2d 628, 634 (9th

15  Cir. 1988).  A person deprives another of a constitutional right within the meaning of Section 1983 if

16  he does an affirmative act, participates in another's affirmative act or omits to perform an act which

17  he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See id.* at

18  633.  The inquiry into causation must be individualized and focused on the duties and

19  responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

20  constitutional deprivation.  *See id.*  Sweeping conclusory allegations will not suffice; the plaintiff

21  must instead "set forth specific facts as to each individual defendant's deprivation of protected rights.

22  *Id.* at 634.  By contrast, respondeat superior is not a proper basis for Section 1983 liability.  *See*

23  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

24      Here, Plaintiff has not alleged specific facts linking Defendant Jacquez's individual conduct

25  to the cause of harm Plaintiff complains he suffered as alleged in his complaint.  *See id.* at 633.

26

27      [3] As mentioned above, Defendants have not filed an answer.  *See* 42 U.S.C. § 1997e(g).

28  Therefore, they are entitled to bring forth this motion to dismiss Plaintiff's supervisory liability claim
against Defendant Jacquez.

1     Accordingly, the Court GRANTS Defendant Jacquez's motion to dismiss the supervisory

2 liability claim against him.  That claim is DISMISSED with leave to amend.  Plaintiff may file an

3 amendment to the complaint that states his claim with specificity, linking Defendant Jacquez's

4 conduct to his claim of excessive force, as directed below.

5                                            **CONCLUSION**

6     For the reasons stated above, the Court orders as follows:

7     1.     The Court GRANTS Defendant Jacquez's motion to dismiss the supervisory liability

8 claim against him and DENIES the remaining Defendants' motion for summary judgment with

9 respect to Plaintiff's claim of excessive force.  (Docket no. 32.)  The summary judgment motion of

10 Defendant Long is DENIED without prejudice to file another motion after further discovery.  All

11 Defendants, other than Defendant Long, may not bring an additional motion for summary judgment

12 without the express permission from the Court.

13     2.     Plaintiff's supervisory liability claim against Defendant Jacquez is DISMISSED with

14 leave to amend.  Within **thirty (30) days** of the date of this Order Plaintiff may file an amended

15 supervisory liability claim against Defendant Jacquez as set forth above in the Discussion Section

16 II.C.(2) of this Order.  **Plaintiff shall resubmit only that claim.**  Plaintiff must clearly label the

17 document an "Amendment to the Complaint," and write in the case number for this action, Case No.

18 C 10-5183 YGR (PR).  The failure to do so by the thirty-day deadline will result in the dismissal

19 without prejudice of his supervisory liability claim against Defendant Jacquez.

20     3.     This case has been pending for over a year and the events at issue occurred over three

21 years ago.  If the case must go to trial, even further delay in resolution will be incurred, as will

22 expenses.  A record already exists which includes evidence of internal investigations and detailed

23 medical records of the injuries suffered.  Having considered all of these factors, the Court finds that

24 it is in the best interests of the parties and judicial efficiency to REFER this action to a Magistrate

25 Judge for court-ordered settlement proceedings.

26     The Northern District of California has established a Pro Se Prisoner Settlement Program.

27 Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference.

28 The Court finds that a referral is in order now that Plaintiff's excessive force claim has survived

**United States District Court**
For the Northern District of California

1  summary judgment.  Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a

2  settlement conference.

3       The conference shall take place within **ninety (90) days** of the date of this Order, or as soon

4  thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Vadas shall

5  coordinate a time and date for the conference with all interested parties and/or their representatives

6  and, within **ten (10) days** after the conclusion of the conference, file with the Court a report

7  regarding the conference.

8       The Clerk of the Court shall provide a copy of this Order to Magistrate Judge Vadas.

9       4.     The Clerk shall send Plaintiff a blank civil rights form along with a copy of this

10 Order.

11      5.     The Stay of Discovery previously ordered on January 26, 2012 (docket no. 71) is

12 hereby lifted.

13      6.     This Order terminates Docket no. 32.

14      IT IS SO ORDERED.

15

16 DATED:  March 15, 2012

   **YVONNE GONZALEZ ROGERS**
   **UNITED STATES DISTRICT COURT JUDGE**

17

18

19

20

21

22

23

24

25

26

27

28

G:\PRO-SE\YGR\CR.10\Trujillo5183.denyMSJ.frm                    18