United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO TRUJILLO, | No. C-10-05183-YGR (DMR) |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 163] AND MOTION TO SEAL [DOCKET NO. 168]** |
| v. | |
| FRANCISCO JACQUEZ, | |
| Defendant(s). | |

Before the court is a joint discovery letter filed by Plaintiff Mario Trujillo and Defendants Francisco Jacquez, Michael Polk, Jose Reynoso, Nicholas White, Jerrold Kay, Cheenong Moua, Andrew Long, David Hickman, and Fernando Avila, as well as a motion to seal an exhibit to the letter. [Docket Nos. 163, 168.] In the letter, Plaintiff moves to compel the production of certain materials from Defendants' personnel files. The court held a hearing on the letter on August 14, 2014. For the reasons stated below and at the hearing, Plaintiff's motion to compel is **granted in part**, and the motion to seal is **granted.**

## I. BACKGROUND

**A. Factual Allegations**

Plaintiff is a prisoner of the California Department of Corrections and Rehabilitation, in its custody and care at Pelican Bay State Prison. Second Am. Compl. ["SAC," Docket No. 159] at ¶ 4. At all relevant times, Defendant Jacquez was warden of Pelican Bay, and the other Defendants were

employed as correctional officers. *Id.* at ¶¶ 7-8. Plaintiff alleges that on February 16, 2009, he was beaten and roughly handled without cause by Defendants Polk and Reynoso while being transferred between cells. *Id.* at ¶¶ 12-31. Defendants Kay, Avila, Hickman, White, Long, and Moua were present at the time but did not do anything to stop the unjustified use of force. *Id.* at ¶¶ 26-28. After the incident, Defendants Polk, Reynoso, and Kay filed reports claiming they had seen Plaintiff using prohibited materials to communicate with other prisoners, which resulted in Plaintiff being placed on Contraband Surveillance Watch, "a brutal and humiliating surveillance program . . . during which inmates are stripped of their clothes, chained up and caged like animals, and made to defecate into a bucket in front of prison staff for 72 hours so that prison staff can sift through their feces in search of the alleged contraband." *Id.* at ¶¶ 35-38. Defendant Polk also claimed that Plaintiff had battered Polk's finger during the transfer between cells, resulting in a disciplinary charge against Plaintiff. *Id.* at ¶¶ 42-43.

Plaintiff brings six causes of action against Defendants, all for violation of 42 U.S.C. § 1983: (1) excessive use of force/failure to intervene; (2) maliciously and sadistically causing harm through the Contraband Surveillance Watch; (3) deliberate indifference to the inhumane conditions of the Contraband Surveillance Watch; (4) retaliation for exercise of constitutional rights; (5) conspiracy to deprive Plaintiff of constitutional rights; and (6) supervisory liability, against only Defendant Jacquez.

**B. Requests for Production ("RFPs") 1 and 2**

At issue in this discovery letter are Defendants' responses to Plaintiff's Fourth RFPs 1 and 2, both of which seek documents from Defendants' personnel files.[1] Plaintiff served these requests on April 3, 2013. Per the parties' agreement, Defendants' deadline for responding was May 19, 2014. Meanwhile, Plaintiff scheduled the depositions of four Defendants for the week of June 2. However,

---

[1] RFP 1 seeks "[t]he personnel, Human Resources, or equivalent files for all defendants, including but not limited to any disciplinary, re-training, or investigatory files." RFP 2 seeks "[a]ny and all documents related to any discipline, re-training, demotion, demerits, or other criticisms of or investigations into defendants' conduct while performing or related to their duties at Pelican Bay between February 2008 and February 2010, if not already included in Request No. 1."

2

after Defendants produced no documents and instead objected to the requests and served a 116-page privilege log, Plaintiff cancelled those depositions.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

## III. DISCUSSION

Plaintiff moves the court to compel the production of documents from Defendants' personnel files responsive to RFPs 1 and 2. Defendants object to the discovery of the requested materials on the grounds that they are (1) not relevant; (2) compromise Defendants' privacy[2]; and (3) are protected by the official information privilege.

**A. Relevance and Burden**

Defendants contend that "the vast majority of the information sought from Defendants' personnel records is . . . [not] remotely likely to lead to the discovery of admissible evidence," so such information should not be discoverable, especially when considering the burden placed on Defendants to review and produce that information. Defendants note that the RFPs would include

---

[2] Defendants object with a generalized concern about Defendants' right to privacy. However, Defendants do not explain this objection other than to note generally that a court may restrict discovery out of concern for litigant privacy, and that disclosure of the personnel files may affect Defendants' privacy. The court cannot consider an argument that Defendants have not made. *See Williams v. Cnty. of Alameda*, No. C 12-02511 SBA, -- F.Supp.2d --, 2014 WL 556008 at * 12 (N.D. Cal. Feb. 10, 2014) ("This Court only considers arguments that are specifically and distinctively raised by the parties in their briefs.") (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

3

Defendants' emergency contact information, tax withholding information, college transcripts, physical fitness certifications, and vacation leave balances.

Since Defendants produced their objections to RFPs 1 and 2, the parties have met and conferred about these RFPs, and Plaintiff has narrowed his request. At the hearing, Plaintiff's counsel noted that Plaintiff did not seek *all* information in Defendants' personnel files (which include irrelevant information such as Defendants' health benefits elections), but rather information about subjects such as Defendants' work and educational history and disciplinary record. The court instructed Plaintiff's counsel to reformulate the amended discovery requests to target specific categories of relevant material in the personnel files, rather than make a generalized request for the entire personnel files. Also at the hearing, Defendants' counsel explained that the personnel files were "not that large," and in total only constituted about half a banker's box worth of documents.

In light of the relevance of the documents, and the minimal burden on Defendants in reviewing and producing the requested documents, Defendants' relevance and burden objections to the discovery are overruled.

**B. Official Information Privilege**

Defendants also assert that the official information privilege protects the request materials.

### 1. Official Information Privilege Standards

Federal common law[3] recognizes a qualified privilege for official information. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The official information privilege "is broad enough to cover all the disparate kinds of data and communications that can be involved in these types of [civil rights] cases [against the government]." *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987). "[F]ederal courts have recognized this qualified privilege as generally covering the disclosure of police material and personnel files." *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004).

---

[3] Since this case concerns federal questions, the applicable privileges are determined by federal law. *Soto v. City of Concord*, 162 F.R.D. 603, 609 (N.D. Cal. 1995).

In order to assert the official information privilege, the party opposing disclosure must make a substantial threshold showing by submitting a declaration or affidavit from a responsible official with personal knowledge of the police department's internal investigatory system. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). "The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Id.* (quoting *Kelly*, 114 F.R.D. at 670).

Once the party asserting the privilege meets the threshold burden, the court "determin[es] what level of protection should be afforded by this privilege . . . by conduct[ing] a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Id.* (citing *Kelly*, 114 F.R.D. at 660, *Sanchez*, 936 F.2d at 1033-34). Some factors that courts may consider when conducting the case-by-case balancing analysis include "(1) [t]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) [t]he impact upon persons who have given information of having their identities disclosed; (3) [t]he degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) [w]hether the information sought is factual data or evaluative summary; (5) [w]hether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) [w]hether the police investigation has been completed; (7) [w]hether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) [w]hether the plaintiff's suit is non-frivolous and brought in good faith; (9) [w]hether the information sought is available through other discovery or from other sources; and (10) [t]he importance of the information sought to the plaintiff's case." *Kelly*, 114

F.R.D. at 663. "In the context of civil rights suits against police departments, this balancing approach should be moderately pre-weighted in favor of disclosure." *Soto*, 162 F.R.D. at 613.

### 2. Soderlund and Barnts Declarations

Upon the court's order, *see* Docket Nos. 166 and 172, Defendants supplemented its briefing with declarations and documents that had apparently been previously served on Plaintiff and were referenced in the joint letter but not attached.[4] *See* Docket No. 167, Ex. B (Barnts Decl.), Ex. C (Soderlund Decl.); Docket No. 169 (Privilege Log).

According to both Barnts and Soderlund, if Plaintiff were to gain access to the requested information, the officers' safety could be threatened. Defendants contend that the requested documents could contain information provided to prison investigators for internal investigations as well as information about prison procedures for handling attacks against correction officers, the disclosure of which could jeopardize the integrity of the internal investigative system and the prison's efforts to protect its correctional officers. Barnts Decl. at ¶ 2. Furthermore, disclosure of information regarding Defendants' employment could jeopardize the officers' safety; for example, if Plaintiff were to learn about disciplinary actions taken against one of the Defendants, he could extort that Defendant by threatening to inform other prisoners about the adverse action. Soderlund Decl. at ¶ 6; Barnts Decl. at ¶ 3. Soderlund and Barnts also expressed some concerns over the safety of other inmates, but did not specify how those concerns were applicable to the present discovery dispute. *See* Barnts Decl. at ¶ 4 (noting that personnel files might include documents that "in some cases, could include private information about third-party inmates," but not specifying the type of information about third-party inmates that could be disclosed, or how that information could be abused if disclosed); Soderlund Decl. at ¶ 6a (noting that "Fact Finding Investigation Reports" could contain identities of inmates who provided unfavorable information to correctional staff concerning the February 16, 2009 incident, which could cause Plaintiff to retaliate against them, but not

---

[4] On April 30, 2012, in response to Plaintiff's earlier discovery requests for documents including Defendants' personnel files, Defendants served on Plaintiff the declaration of B. Barnts, the then-serving litigation coordinator at Pelican Bay. On March 18, 2013, in response to Plaintiff's motion to compel the same documents, Defendants served on Plaintiff the declaration of Shara Soderlund, Barnts' apparent successor as litigation coordinator at Pelican Bay.

6

explaining whether these reports were contained in Defendants' personnel files or were responsive to the RFPs currently in dispute).

### 3. Stipulated Protective Order

The parties have entered into a stipulated protective order in this case. *See* Docket No. 126. The protective order is not a form order; it contains language tailored by the parties apparently to address the security and privacy concerns implicated by disclosure of certain confidential materials to Plaintiff, his associates, other inmates, or the general public. For example, the protective order permits certain information to be designated "Confidential - Attorneys' Eyes Only." *See* Docket No. 126 at 2 ("Attorneys' Eyes Only" designation appropriate for information "which if publically disclosed would threaten the privacy rights or safety and security of any inmate, prison staff member, or third party"). The protective order specifies that information so designated may be disclosed only to the receiving party's counsel of record and his or her support staff; experts; the court and its personnel; court reporters and their staff; professional vendors; and the author, recipient, or custodian of the disclosed document. *Id.* at 8. In addition, the protective order describes who may *not* receive documents designated "Attorneys' Eyes Only", including Plaintiff:

> This Protective Order is intended to and does preclude each Party's Counsel of Record from disclosing documents and information designated "CONFIDENTIAL-ATTORNEYS EYES' ONLY" to Plaintiff, Mario Trujillo, his family, friends, or associates, to any inmate or parolee, to the general public, and to any of the named defendants or other law enforcement personnel – including but not limited to employees of Pelican Bay State Prison and the California Department of Corrections and Rehabilitation – unless they would have, or had, access to such Protected Material in the normal course and scope of their employment. It is agreed by the Parties and ordered by the Court that the information designated "CONFIDENTIAL – ATTORNEYS EYES' ONLY" is never to be disseminated or discussed with any inmates, including a Party or witness, parolee, or the public, in this case or in any other capacity, unless there is a successful challenge to such information under section 6 of this order. In the event the Receiving Party believes that the information designated "CONFIDENTIAL – ATTORNEYS EYES' ONLY" needs to be discussed with their client or another person not identified below, the Receiving Party must first contact the Designating Party to discuss disclosure of the specific record, in accordance with the provisions of section 6 of this order.

*Id.* at 7-8.

Defendants concede that the protective order "does mitigate the extent of disclosure of this very personal information," but argue that the protective order does not nullify all security and privacy concerns. According to Barnts, "[d]isclosing private information about prison officers and

7

employees . . . even subject to a protective order . . . is inadequate to ensure that plaintiffs will not learn of the information inadvertently through their lawyer, their lawyer's staff, or their lawyer's representative. Seemingly trivial information may be disclosed to an inmate even in casual conversations." Barnts Decl. at ¶ 5. Furthermore, the threat of contempt would not deter Plaintiff from obeying the protective order, since "most prisoners at Pelican Bay State Prison retain very little money . . . and are already serving life or long sentences." Soderlund Decl. at ¶ 10.

### 4. Whether Official Information Privilege Applies

In light of the generalized nature of Defendants' security concerns , the relevance of the materials sought and the low burden on Defendants in producing them, the stringent protections of parties' protective order, and the court's obligation to apply the "balancing approach moderately pre-weighted in favor of disclosure," the court finds that the conditional privilege does not apply.

The parties shall proceed as follows: by August 20, 2014, Plaintiff's counsel shall serve amended discovery requests for Defendants' personnel files, targeting only those portions of the personnel files that are relevant to this case. The parties will meet and confer regarding the procedures for production (i.e., whether Defendants will review and produce copies of the documents or whether Defendants will make the original documents available to Plaintiff's counsel for review and designation for production). Regardless of the procedures, the court expects that Plaintiff's counsel will receive the a copy set of the requested documents within three weeks of the hearing. Documents warranting "Confidential - Attorneys' Eyes Only" designation under the protective order should be marked accordingly.

### IV.  MOTION TO SEAL

Defendants have moved to seal the privilege log, *see* Docket No. 168, and Plaintiff does not oppose the motion. Civil Local Rule 79-5(b) states that "no document may be filed under seal (i.e., closed to inspection by the public) except pursuant to a court order . . . . A sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law (hereinafter referred to as 'sealable')." "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." *Id.*  If the court grants the motion, the document shall

remain sealed for ten years, but a party may seek an order to continue the seal beyond the ten years upon showing good cause at the conclusion of the case."[5]  Civil L.R. 79-5(f) (emphasis added).

The privilege log provides detailed information about every document contained within Defendants' personnel files, including private information not within the public realm, such as the dates, authors, and recipients of Defendants' performance evaluations, positional history, training records, and employment actions.  Defendants explain why "providing such information to the inmate population can be detrimental in the prison atmosphere given the unique relationship between inmates and staff":

> For example, if Plaintiff were to learn of any disciplinary action taken against one of the Defendants, he could attempt to extort that Defendant by threatening to inform other inmates about the adverse action, unless special privileges were provided.  Indeed, other inmates have been known to obtain confidential information about staff and use it against them for this very purpose.

*Id.*

Given the personal and detailed nature of the information on the log, and the potential security risks presented by making the document available to the public, the court finds good cause to grant Defendants' motion to seal the privilege log.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is **granted in part**.  The requested documents shall be produced by Defendants pursuant to the procedure described above.  The motion to seal is **granted.**

IT IS SO ORDERED.

Dated:  August 15, 2014



_____
DONNA M. RYU
United States Magistrate Judge

---

[5] Therefore, Defendants' request that the privilege log remain sealed for fifty years, rather than the standard ten year period provided in the local rules, should be raised at the conclusion of the litigation.

9