1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

**MARIO TRUJILLO**,

Plaintiff,

8

v.

9

**FRANCISCO JACQUEZ, ET AL.**,

10

Defendants.

11
12

Case No.  10-cv-05183-YGR

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 196

13          Plaintiff Mario Trujillo, a state prisoner incarcerated at Pelican Bay State Prison ("PBSP"),

14   brings this civil rights action pursuant to 42 U.S.C. section 1983 against defendants Francisco

15   Jacquez, Michael Polk, Jose Reynoso, Nicholas White, Jerrold Kay, Cheenong Moua, Andrew

16   Long, David Hickman, and Fernando Avila alleging the following constitutional violations: (i)

17   excessive use of force/failure to intervene (against defendants Polk, Reynoso, Kay, Moua, White,

18   Avila, Long, and Hickman); (ii) maliciously and sadistically causing harm through contraband

19   surveillance watch ("CSW") (against defendants Polk, Reynoso, and Kay); (iii) deliberate

20   indifference to inhumane conditions of CSW (against defendants Polk, Reynoso, and Kay); (iv)

21   retaliation for exercise of constitutional rights (against defendants Polk, Reynoso, and Kay); (v)

22   conspiracy to deprive plaintiff of constitutional rights (against all defendants); and (vi) supervisor

23   liability (against Jacquez).

24          Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 as

25   to Counts III (conditions of confinement), IV (retaliation), V (conspiracy), and VI (supervisor

26   liability), arguing defendant failed to exhaust available administrative remedies prior to bringing

27   this action.  (Dkt. No. 196 ("Mot.").)

28          Defendants also seek judgment on the pleadings pursuant to Federal Rule of Civil

United States District Court
Northern District of California

United States District Court
Northern District of California

Procedure 12(c) as to Count II (causing harm through CSW) for failure to state a claim and Counts II (causing harm through CSW), III (conditions of confinement), IV (retaliation), and V (conspiracy) based on the statute of limitations.  (*Id.*)  Plaintiff opposes the motion.  (Dkt. No. 204 ("Oppo.").)[1]

The matter came for hearing on January 27, 2015.  Having carefully considered the papers submitted, the record in this case, and the arguments of counsel, and good cause shown, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motions.

## I.   BACKGROUND

### A.   Factual Allegations in the Second Amended Complaint

During all relevant times, defendant Jacquez served as warden and the remaining defendants as correctional officers at PBSP, where plaintiff was and remains imprisoned.  (SAC ¶¶ 4, 7–9.)[2]  The first incident at issue started on February 16, 2009 at approximately 10:50 a.m.  (*Id.* ¶ 12.)  Plaintiff had at that time been imprisoned at PBSP for less than a year.  (*Id.* ¶ 9.)  He was generally "scared and concerned about his physical and mental welfare" in light of the "sinister history and reputation of PBSP and its officers . . . ."  (*Id.* ¶ 10.)  Before February 16, 2009, he had never been subjected to an individualized, random cell search.  (*Id.* ¶ 11.)  Consequently, when defendants Polk, Reynoso, and Kay approached his cell at Administrative Segregation Unit ("ASU") 1, Section G, Cell 13 that morning and ordered him to "cuff up"[3]

---

[1] In connection with these motions, both parties filed requests that the Court take judicial notice of various documents pursuant to Federal Rule of Evidence 201(b)(2).  (Dkt. Nos. 197 ("Mot. RJN") and 205 ("Oppo. RJN").)  "[A] court may take judicial notice of 'matters of public record.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  The documents sought to be noticed include various regulations, court filings, and administrative records.  The Court grants these requests and notices the existence and contents of the submitted documents, but does not necessarily accept the truth of all matters asserted therein.

[2] This subsection simply presents certain factual allegations pled in the Second Amended Complaint, which the Court need not accept as true in all circumstances in light of other evidence or judicially noticed documents submitted in connection with this motion and pursuant to the legal standards provided herein.  *See, e.g., Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

[3] A procedure whereby the prisoner, facing his back to the cell door, places his hands through a slot in the door and submits to handcuffs.  (SAC ¶¶ 13, 17.)

without explanation, plaintiff was fearful of their intentions. (*Id.* ¶¶ 13, 14.) He was not engaged in any prohibited activity at the time and had received no notice that cell searches or interrogations would take place that day. (*Id.* ¶ 12.) As a result, he at first refused the order, instead asking Polk why they wanted to search his cell. (*Id.* ¶ 15.) In lieu of an answer, Polk merely repeated the "cuff up" command. (*Id.*) Several times, plaintiff asked "why?" and was told in response to "cuff up." (*Id.*) Eventually, Polk began to kick the cell door. (*Id.* ¶ 16.) After Polk threatened to use chemical agents on plaintiff, plaintiff submitted to handcuffs. (*Id.* ¶¶ 16, 17.)

The officers removed plaintiff from the cell, now handcuffed behind his back. (*Id.* ¶ 17–18.) Polk held plaintiff by his arm and handcuffs. (*Id.* ¶ 18.) With no warning and without provocation Polk forcefully pushed plaintiff up against the wall, yelling at him to stop "resisting." (*Id.* ¶ 19.) Plaintiff was not resisting. (*Id.*) Kay and Reynoso stood by silently while this transpired. (*Id.*)

Defendants Polk, Reynoso, and Kay proceeded to escort plaintiff down the Section G hallway toward the ASU 1 rotunda. (*Id.* ¶ 20.) Polk continued to grip plaintiff's cuffed wrists and held his left shoulder. (*Id.*) Defendants Avila, Hickman, White, Long, and Moua were present in the rotunda and observed Polk, Reynoso, and Kay enter with plaintiff. (*Id.* ¶ 22.) Polk told plaintiff to wait while Hickman unlocked a holding cell in the rotunda. (*Id.* ¶ 23.) Suddenly, again without provocation, Polk started yelling at plaintiff to "stop resisting" and pushed him into a waist-level metal food cart. (*Id.* ¶ 24.) The other defendants present did not speak up or intervene. (*Id.*) Polk spun plaintiff toward Reynoso, who then used his expandable baton to strike plaintiff in the chest near his collarbone. (*Id.* ¶ 25.) The other officers still did not intervene and plaintiff still did not resist. (*Id.*) Reynoso then used his baton to strike near plaintiff's right knee, which buckled, causing plaintiff to fall to the concrete floor with Polk on his back. (*Id.* ¶ 26.) Straddled by Polk, plaintiff felt repeated blows to the back of his head. (*Id.* ¶ 27.) Shoving plaintiff's face into the floor, Polk yelled, "[w]hen I tell you to cuff up, you cuff up! Do you understand me?" (*Id.* ¶ 28.) Plaintiff responded "yes, sir," and Polk relieved the pressure and asked Kay and White to put leg chains on plaintiff. (*Id.* ¶¶ 29–30.)

Plaintiff was then placed in a holding cell where he was monitored by Hickman and Long,

United States District Court
Northern District of California

who despite being present in the rotunda during the incident did not file the required reports; plaintiff believes they instead claimed they were not present in order to abide by the "well-known 'code of silence'" among PBSP officers.  (*Id.* ¶ 31.)  Nurse Molina evaluated plaintiff and completed a report noting the following injuries: "abrasion and swollen area above left eye, abrasion and swollen area on back of head, abrasion and swollen area on right upper torso at pectoral muscle, abrasion on left elbow and abrasion on right knee."  (*Id.* ¶ 33.)  Plaintiff told Molina and Officer Cleary that he had not been resisting and that some of the defendants had used excessive force against him.  (*Id.*)

Polk, Reynoso, and Kay covered up their actions and retaliated against defendant—perhaps in anger over his report to Molina and Cleary—by filing false reports.  (*Id.* ¶¶ 33, 35.)  They claimed they instituted the morning's search after seeing plaintiff "fishing"—using banned string and paper to communicate with another inmate.  (*Id.* ¶ 35.)  No "fishing" equipment was found during the search.  (*Id.*)  Plaintiff alleges the false reports were a result of a conspiracy between Polk, Reynoso, and Kay, instigated by ranking officer Polk.  (*Id.* ¶ 36.)

As a result of their report, plaintiff was placed on contraband surveillance watch, "a brutal and humiliating surveillance program" approved by Warden Jacquez.  (*Id.* ¶ 37.)  During CSW, "inmates are stripped of their clothes, chained up and caged like animals, and made to defecate into a bucket in front of prison staff for 72 hours so that prison staff can sift through their feces in search of the alleged contraband."  (*Id.* ¶ 38.)  Plaintiff was segregated in a small, concrete cell for 72 hours with only a bucket and a plastic mattress during the night.  (*Id.* ¶ 39.)  Due to wearing "Hand Isolation Devices," he lost sensation in his hands.  (*Id.*)  By the conclusion of the CSW, no contraband had been found.  (*Id.* ¶ 41.)

In an additional attempted cover-up, Polk later claimed plaintiff had "battered" Polk's finger with plaintiff's head while plaintiff was pinned under him on the floor of the rotunda.  (*Id.* ¶ 42.)  As a result, PBSP staff found plaintiff guilty of battery on a peace officer, a disciplinary charge.  (*Id.* ¶ 43.)

On March 1, 2009, plaintiff filed a complaint of staff misconduct with Warden Jacquez.  He alleged Jacquez failed to (i) investigate plaintiff's allegations properly, (ii) discipline the

4

officers involved, and (iii) ensure the officers were properly trained in reasonable use of force. (*Id.* ¶ 44.) Plaintiff also alleged that the complaint process itself involved an "inherent conflict of interest" because defendant Hickman, who witnessed and failed to stop some of the accused conduct and who reported to Polk, was appointed as plaintiff's investigative employee and tasked with assisting him in prosecuting his case. (*Id.* ¶ 46.) Additionally, the procedure was inherently biased because Polk, as supervising officer, was both the "primary alleged perpetrator" and the individual tasked with preparing an "Incident Supervisor's Review," which concluded that all force used during the incident complied with relevant procedures. (*Id.* ¶ 48.)

### B.   Administrative Appeals

On March 1, 2009, plaintiff submitted the administrative grievance noted above in connection with the use of force incident. (SAC ¶ 51; Answer ¶ 51.) The second level review found no staff violations. (SAC ¶ 52; Answer ¶ 52.) Plaintiff then appealed to the final-level "director's review," which was denied. (SAC ¶ 53; Answer ¶ 53.) The Court has judicially noticed Institutional Log. No. PBSP-S-09-00716 in connection with this grievance, which includes both the underlying grievance and appeals documents. (Oppo. RJN, Ex. B (the "'716 Appeal File").) This grievance generally relates to the February 16, 2009 incident, specifically the purported "excessive use of force" by Polk, the failure to intervene by other officers, retaliation by Polk and Reynoso in sending plaintiff to CSW based on a "fabricated" report, and "inhumane" conditions of confinement in CSW. (*Id.* at 2, 4–5.)

Plaintiff also appealed, through director's level review, the rules violation resulting from his purported battery on a peace officer, discussed above. The Court noticed Institutional Log. No. PBSP-S-09-01308 in connection with this grievance, which includes both the underlying grievance and appeals documents. (Oppo. RJN, Ex. C (the "'1308 Appeal File").) In this grievance, plaintiff generally complained of being found guilty of battering Polk during the February 16, 2009 incident, based on allegedly false reports and due process violations in connection with the related investigation and hearing. (*Id.* at 2, 4–5.)

### C.   Procedural Background

Plaintiff initiated the instant action on November 16, 2010. (Dkt. No. 1.) At the time he

filed the initial complaint, he was *pro se*.  After reviewing the complaint, the Court found cognizable Eighth Amendment claims for excessive use of force, failure to intervene, and supervisory liability.  (Dkt. No. 3.)  On March 15, 2012, the Court granted in part and denied in part defendants' motion for summary judgment.  (Dkt. No. 75.)  Plaintiff filed his amended complaint on May 31, 2012.  (Dkt. No. 84.)  On September 17, 2013, the Court denied defendants' motion to dismiss all claims and granted plaintiff's renewed motion for appointment of counsel.  (Dkt. No. 119.)  Plaintiff, now represented by legal counsel (Dkt. No. 120), was granted leave to amend on June 26, 2014.  (Dkt. No. 158.)  He then filed his Second Amended Complaint. Defendants filed an answer thereto.  (Dkt. No. 165 ("Answer").)  The instant motion followed.

## II.     RULE 56(a) MOTION

### A.     Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* at 322–23.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  If the evidence in opposition to the motion is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v.*

United States District Court
Northern District of California

*Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Once the moving party meets its initial burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 324). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *See Leslie*, 198 F.3d at 1158 (where nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *See Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury.") But when the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–83 (2007).

It is not the task of the district court to "scour the record in search of a genuine issue of

triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of "identify[ing] with reasonable particularity the evidence that precludes summary judgment."  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id*.; *see, e.g*., *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028–29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  *Id*. at 1029.  "The district court need not examine the entire file for evidence establishing a genuine issue of fact."  *Id*. at 1031.

**B.    Exhaustion**

Defendants argue plaintiff failed to exhaust his available administrative remedies prior to filing this action in connection with Counts III (conditions of confinement), IV (retaliation), V (conspiracy), and VI (supervisor liability).  Defendants do not dispute that plaintiff exhausted the administrative review process as to Counts I (use of force) and II (causing harm through CSW).  Plaintiff argues he exhausted the administrative process as to all six claims.

**1.    Legal Framework**

**a.    Prison Litigation Reform Act**

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. section 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies equally to prisoners held in private or government facilities.  *See Roles v. Maddox*, 439 F.3d 1016, 1017–18 (9th Cir. 2006).  Exhaustion is not always required, however.  If the court determines that a claim is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief," the claim may be dismissed without first requiring exhaustion.  42 U.S.C. § 1997e(c)(2).  The exhaustion requirement only

United States District Court
Northern District of California

applies to cases filed after the PLRA's passage on April 26, 1996.  *See Bennett v. King*, 293 F.3d 1096, 1097–98 (9th Cir. 2002) (exhaustion requirement applied to case refiled after PLRA enacted); *Bishop v. Lewis*, 155 F.3d 1094, 1096 (9th Cir. 1998); *accord Wright v. Morris*, 111 F.3d 414, 418 (6th Cir. 1997); *In re Smith*, 114 F.3d 1247, 1249 n.1 (D.C. Cir. 1997) (citing *Wright*).

Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Woodford*, 548 U.S. at 85.  Even when the relief sought cannot be granted by the administrative process, e.g., monetary damages, a prisoner must still exhaust administrative remedies.  *Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734).  The mandatory exhaustion of available administrative remedies is not limited to suits under section 1983, but to any suit challenging prison conditions.  *Woodford*, 548 U.S. at 85 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies.  *Woodford*, 548 U.S. at 93.

While the PLRA itself does not define prison conditions, the Supreme Court construes the term broadly.  *See Roles*, 439 F.3d at 1018.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532; *see, e.g.*, *Roles*, 439 F.3d at 1018 (exhaustion requirement applies to claim that private prison employee confiscated prisoner's magazines); *Bennett*, 293 F.3d at 1097–98 (exhaustion requirement applies to claims of harassment by prison officials in retaliation for prisoner's religious expression).

The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance.  *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005).

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford*, 548 U.S. at 84. "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to

United States District Court
Northern District of California

1    mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id.*

2    at 92.  Therefore, the PLRA exhaustion requirement requires proper exhaustion.  *Id*.  "Proper

3    exhaustion demands compliance with an agency's deadlines and other critical procedural rules

4    because no adjudicative system can function effectively without imposing some orderly structure

5    on the course of its proceedings." *Id*. at 90–91 (footnote omitted).

6         To "properly exhaust" under the PLRA, a prisoner need only comply with the prison's

7    grievance procedures, which define the boundaries of proper exhaustion.  *Jones v. Bock*, 549 U.S.

8    199, 218 (2007).  The Court has judicially noticed California Code of Regulations Title 15,

9    sections 3084–3084.7 (2008 version).  (Mot. RJN, Ex. A.)  The regulation requires the prisoner "to

10   lodge his administrative complaint on CDC form 602 and 'to describe the problem and action

11   requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 §

12   3084.2(a)).

13        Where a prison's grievance procedures do not specify the requisite level of factual

14   specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress

15   is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297

16   F.3d 646, 650 (7th Cir. 2002)).  It is not necessary for the grievance to include legal terminology

17   or legal theories, unless they are "needed to provide notice of the harm being grieved." *Griffin*,

18   557 F.3d at 1120.  Nor must a grievance include "every fact necessary to prove each element of an

19   eventual legal claim." *Id*.  The purpose of a grievance is to alert the prison to a problem and

20   facilitate its resolution, not to lay groundwork for litigation.  *Id*.  The grievance should include

21   sufficient information "to allow prison officials to take appropriate responsive measures." *Id*.

22   (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper

23   bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but

24   officials disregarded that order); *see Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014)

25   (claim properly exhausted where inmate described nature of the wrong and identified defendant as

26   a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

27        Administrative remedies may not be exhausted where the grievance, liberally construed,

28   does not have the same subject and same request for relief.  *See, e.g.*, *Morton*, 599 F.3d at 946

United States District Court
Northern District of California

1  (grievance that complained of visitation restrictions, and did not mention an assault or theorize

2  that the visitation restriction imposed was related to the assault, was insufficient to put prison

3  officials on notice that staff conduct contributed to the assault); *O'Guinn v. Lovelock Correctional*

4  *Center*, 502 F.3d 1056, 1062–63 (even with liberal construction, grievance requesting a lower

5  bunk due to poor balance resulting from a previous brain injury was not equivalent to, and

6  therefore did not exhaust administrative remedies for, claims of denial of mental health treatment

7  in violation of the ADA and Rehabilitation Act).

8  　　　　The plaintiff is not required to plead or demonstrate exhaustion of administrative remedies;

9  rather, failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216. The

10  "appropriate device" to raise the issue is a motion for summary judgment. *Albino v. Baca*, 747

11  F.3d 1162, 1168 (9th Cir. 2014). Defendants may produce evidence proving failure to exhaust in

12  a motion for summary judgment under Rule 56. *Id*. at 1166, 1169. "If undisputed evidence

13  viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is

14  entitled to summary judgment under Rule 56." *Id*. at 1166. But "[i]f material facts are disputed,

15  summary judgment should be denied and the district judge rather than a jury should determine the

16  facts in a preliminary proceeding." *Id*.

17  **　　　b.  California Department of Corrections Administrative Remedies**

18  　　　　The California Department of Corrections and Rehabilitation ("CDCR") provides inmates

19  and parolees the right to appeal administratively "any departmental decision, action, condition, or

20  policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

21  Regs. tit. 15, § 3084.1(a). It also provides inmates the right to file administrative appeals alleging

22  misconduct by correctional officers. *See id*. § 3084.1(e). Under the regulations that existed before

23  amendments effective January 28, 2011, in order to exhaust available administrative remedies

24  within this system, a prisoner was required to submit his complaint on CDCR Form 602 (referred

25  to as a "602") and proceed through several levels of appeal: (1) informal level grievance filed

26  directly with any correctional staff member, (2) first formal level appeal filed with one of the

27  institution's appeal coordinators, (3) second formal level appeal filed with the institution head or

28  designee, and (4) third formal level appeal filed with the CDCR director or designee (director's

1    level review).  *Id.* §§ 3084.2, 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264–65 (9th Cir. 2009);

2    *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative

3    remedies exhaustion requirement under section 1997e(a).  *See Barry*, 985 F. Supp. at 1237–38.

4        A prisoner is not required to exhaust state judicial remedies before filing a section 1983

5    claim.  *See Rumbles v. Hall*, 182 F.3d 1064, 1070 (9th Cir. 1999), *overruled on other grounds by*

6    *Booth*, 532 U.S. 731.  Nor is a prisoner required to comply with the California Tort Claims Act

7    and present his claims to the State Board of Control in order to fulfill the exhaustion requirement.

8    *Rumbles*, 182 F.3d at 1070.

9            **2.    Analysis**

10       The parties submitted separate statements of undisputed facts pursuant to this Court's

11   standing order.  However, those statements largely contain disputed interpretations of the contents

12   of various documents, namely the institutional logs relating to plaintiff's administrative appeals.

13   On summary judgment, for purposes of determining whether plaintiff exhausted his administrative

14   appeals as to certain claims, the Court may consider the judicially noticed documentary evidence

15   itself and need not credit unreasonable interpretations of the contents thereof.

16       At issue as to exhaustion are Counts III (conditions of confinement), IV (retaliation),

17   V (conspiracy), and VI (supervisor liability).  The Court addresses each in turn.

18          **a.   Count III: Deliberate Indifference to Conditions of CSW**

19       Plaintiff contends the grievance memorialized in the '716 Appeal File exhausted Count III,

20   wherein plaintiff challenges the constitutionality of his conditions of confinement while placed on

21   CSW.  Specifically, plaintiff points to the following written statements he made in connection

22   with that appeal:

23       • "This was all fabricated just to get me sent to contraband watch, which for the

24           record had NEGATIVE RESULTS!  I was placed in *inhumane living conditions*

25           because of their lies."  ('716 Appeal File at 5 (emphasis added).)

26       • "Its [*sic*] clear my rights were violated.  For one the force used against me.  Two[,]

27           placed in Contraband Watch as retaliation which produced negative results."

28           (*Id.* at 3.)

United States District Court
Northern District of California

- Seeking as relief "$500.00 dollars [*sic*] a day for every day I spent in Contraband Watch."  (*Id*. at 5.)

Defendants do not dispute that this grievance exhausted plaintiff's excessive use of force claim.  However, they argue it did not properly put the administration on notice that plaintiff was also complaining about the conditions of his confinement during CSW.  The Court disagrees.

While plaintiff admittedly focused the bulk of his grievance on detailing the excessive use of force incident, he plainly stated that the CSW conditions he was subjected to were "inhumane." In terms of relief sought, he also specifically requested $500 per day for each day he spent in CSW.  Liberally construed, the grievance therefore encompassed the subject of the conditions of plaintiff's confinement during CSW.  The prison should have been alerted based on these statements that plaintiff was complaining of those conditions.  Indeed, the prison at least realized that CSW generally was at issue.  On second level review, in a section entitled "appeal issue," Warden Jacquez noted that "Trujillo states he was placed on Contraband Surveillance Watch as a form of punishment."  (*Id*. at 7.)

Defendants contend that plaintiff failed at that time to allege the specific details about the conditions of his confinement now included in the Second Amended Complaint.  As noted above, however, such specificity is not required in order to exhaust the administrative process.

Therefore, the motion on this ground is **Denied** as to Count III.

### b.  Count IV: Retaliation

Count IV alleges Polk, Reynoso, and Kay retaliated against plaintiff for his complaint about their purported excessive use of force by issuing false statements which caused him to (1) be sent to CSW and (2) receive a rules violation for battery on Polk.  As to the first, defendant concedes that plaintiff sufficiently exhausted his complaint based on the '716 Appeal File. Plaintiff's description of the problem included a statement that "they also retaliated against me by getting me sent to Contraband Watch."  ('716 Appeal File at 5.)  Moreover, his request for a director's level review stated one of the ways in which his rights had been violated was being "placed in Contraband Watch as retaliation which produced negative results."  (*Id*. at 3.)

As to the second, plaintiff points to aspects of both the '1308 Appeal File and the '716

United States District Court
Northern District of California

Appeal File as exhausting his claim of retaliation in connection with the battery charge.  In the '1308 Appeal File, plaintiff described his grievance as being wrongly punished for a purported battery that he did not commit—where, in fact, he had been the victim of a battery.  ('1308 Appeal File at 4.)  This grievance does not allege that the battery charge was brought in *retaliation* for plaintiff's complaint about the purported excessive use of force.  It thus put the prison on notice that plaintiff was complaining about the rules violation report and the investigation and hearing process that led to him being found guilty of the violation.  It did not, however, adequately alert the prison to this retaliation charge.  In the '716 Appeal File, plaintiff arguably (and obliquely) raised this retaliation issue—but not until his director's level appeal—by stating Polk and Reynoso "charged me with a false and frivolous [battery charge] as a cover up to justify their actions." ('716 Appeal File at 3.)  However, plaintiff did not raise this issue in the underlying grievance.[4] Consequently, plaintiff did not adequately exhaust the administrative process in connection with this claim.

Thus, the motion as to Count IV on this ground is **GRANTED** and Count IV is **DISMISSED** only insofar as it alleges retaliation by issuance of a rules violation report against plaintiff for battery against Polk.

### c.  Count V: Conspiracy

In Count V, plaintiff alleges a wide-ranging conspiracy by defendants.  First, he alleges a conspiracy by Polk, Reynoso, and Kay to fabricate stories about (1) his possession of contraband (that sent plaintiff to CSW) and (2) his alleged battery on Polk (which resulted in a rules violation).  (SAC ¶ 69.)

Second, it alleges a conspiracy by all defendants:

> to deprive Plaintiff of his constitutional rights to due process and to be free of cruel and unusual punishment by fabricating reports,

---

[4] Plaintiff argues he failed to raise this issue in the grievance because the rules violation report—which issued on February 27, 2009—did not resolve until March 30, 2009, a month after he filed the grievance.  This argument is unavailing, however, because the retaliation claim alleges that the officers retaliated against him simply by *filing* the false report.  Thus, plaintiff should have raised the issue in his initial grievance (or subsequently filed a separate grievance addressing the issue) to exhaust his administrative remedies properly.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3

> failing to properly report the true facts regarding the incidents of February 16, 2009, failing to properly investigate Plaintiff's allegations, conducting, supervising and/or participating in an incomplete and hopelessly biased "investigation" into the subject incidents, and—on defendant Jacquez's part—failing to rectify any of these deficiencies.

4 (*Id.*)

5       In opposing the motion, plaintiff argues (without providing specific page number citations

6 to the relevant portions of his appeal logs) that he properly grieved his conspiracy claim by

7 generally alleging: (1) Polk wrongfully accused plaintiff, in front of other officers, of resisting in

8 order to justify Polk's use of force ('716 Appeal File at 4); (2) other officers observed that

9 wrongful use of force and did not intervene (*id*. at 2); (3) Polk and Reynoso made false statements

10 about contraband which sent plaintiff to CSW (*id*. at 5); (4) correctional officers "fabricated" their

11 reports regarding the use of force incident (*id*. at 6); (5) some officers present failed to file reports

12 (*id*. at 6); and (6) plaintiff was charged with a false and frivolous battery claim as part of a "cover

13 up" (*id*. at 3).  (Oppo. at 10–11.)  Plaintiff failed to note that issues 4–6 were not raised until the

14 director's level appeal.  *See Sapp v. Kimbrell*, 623 F.3d 813, 825 (9th Cir. 2010) ("[A]n inmate

15 must first present a complaint at the first level of the administrative process.").  However, even

16 considering only the issues raised in the initial grievance, plaintiff put the prison on notice that he

17 was complaining, in part, of a possible conspiracy by Polk and Reynoso.  The grievance claimed

18 Polk and Reynoso made false statements about contraband which sent plaintiff to CSW, strongly

19 implying they were conspiring together in order to concoct a purportedly false story about

20 plaintiff's "fishing" activities.

21       Plaintiff also points generally to several aspects of the '1308 Appeal File without specific

22 citation and without specifying which were included in the initial grievance.  The Court finds that

23 the relevant allegations in the initial grievance underlying that appeal are as follows: (1) out of six

24 officers who filed initial reports about the excessive use of force incident, only Polk and Reynoso

25 purportedly saw plaintiff's "battery" of Polk ('1308 Appeal File at 4); (2) another officer present,

26 Hickman, failed to file an incident report (*id*. at 5); and (3) plaintiff was not allowed to bring in as

27 witnesses other inmates who witnessed that event during the ensuing investigation (*id*. at 4).  The

28 director's level decision in the '1308 Appeal File purported to screen out any further conspiracy

1    allegations by noting it was processed solely as a disciplinary complaint and other issues had to be

2    addressed in a separate appeal.  (*Id.* at 26.)  However, the grievance itself put the prison on notice

3    that plaintiff was complaining of a possible conspiracy by suggesting Polk and Reynoso together

4    falsified the "battery" story.

5           In light of the foregoing, the prison should have been reasonably alerted to a possible claim

6    of conspiracy against Polk and Reynoso in connection with the events at issue.  Otherwise, the

7    Court finds that these grievances failed to exhaust plaintiff's wide-ranging conspiracy claim in

8    Count V.  Therefore, the motion on this ground as to Count V is **GRANTED IN PART**, and Count V

9    is **DISMISSED** except as to Polk and Reynoso.

10                       **d.   Count VI: Supervisor Liability**

11          Finally, the motion argues Count VI, alleging supervisor liability against Jacquez (for

12   failure to take disciplinary action, train officers, fairly preside over unbiased investigations, etc., in

13   a manner appropriate under the circumstances) was not administratively exhausted.  Plaintiff first

14   argues that because this claim relates to Jacquez's handling of plaintiff's other grievances, plaintiff

15   was prohibited pursuant to California Code of Regulations Title 15, section 3084.4 from filing a

16   successive appeal regarding his handling of the initial grievance.  (Oppo. at 11–12.)  Second,

17   plaintiff argues that he did not need to "spell out" this claim for supervisory liability against

18   Jacquez because Jacquez has ultimate responsibility for the actions of the officers involved.  (*Id.* at

19   12.)  Finally, plaintiff points to requested action in connection with the '716 Appeal File that

20   relevant staff be ordered to undergo "proper training" and his statement that the officers did not

21   follow relevant policies.  (*Id.*)  He also points to his descriptions in the '1308 Appeal File of a

22   flawed investigation and hearing which resulted in his due process rights being violated.  (*Id.*)

23          Plaintiff's arguments do not persuade.  First, as defendants correctly point out, the version

24   of the cited regulation section in effect at the relevant time and of which this court has taken

25   judicial notice does not generally prohibit the filing of a separate grievance regarding the handling

26   of an earlier appeal.  Second, plaintiff has failed to present any legal authority supporting the

27   argument that a supervisor liability claim against a warden is always exhausted whenever an

28   inmate exhausts complaints regarding conduct of any officer by virtue of the warden's role as the

United States District Court
Northern District of California

officer's superior.  The Court therefore declines to credit that argument, which would automatically subject the entire chain of command to liability whenever a low-level officer was accused of improper conduct.  Finally, and for similar reasons, the aspects of the grievances referenced by plaintiff were not specifically targeted at Jacquez and so did not did not administratively exhaust this claim against the warden.  Plaintiff needed to file a separate grievance addressing Jacquez's handling of the initial grievance(s) and/or staff supervision in order to exhaust his administrative remedies properly in connection with those issues.  Because he failed to do so, the motion on this ground is **GRANTED** as to Count VI and that count is therefore **DISMISSED**.

## III.     RULE 12(c) MOTION

### A.     Legal Standard

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6).  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79.

In ruling on a motion for judgment on the pleadings, the Court may consider documents incorporated by reference in the pleadings and "may properly look beyond the complaint to matters of public record" that are judicially noticeable.  *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.     Statute of Limitations**

Defendants seek judgment on the pleadings as to Counts II (causing harm through CSW), III (conditions of confinement), IV (retaliation), and V (conspiracy), arguing they are time-barred because plaintiff did not amend his complaint to include them prior to the expiration of the relevant statute of limitations.  The Court will address each in turn.

**1.     Legal Framework**

Section 1983 does not contain its own limitations period.  The appropriate period is that of the forum state's statute of limitations for personal injury torts.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (articulating uniform rule of *Wilson's* retroactive effect).  If the state has multiple statutes of limitations for different torts, "courts considering section 1983 claims should borrow the general or residual statute for personal injury actions."  *See Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999).  In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code section 335.1 and is the applicable statute in section 1983 actions.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva*, 169 F.3d at 610 (limitations period for filing section 1983 action in California governed by residual limitations period for personal injury actions in California, which was then one year and was codified at Cal. Civ. Proc. Code § 340(3)); Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).

A federal court must give effect to a state's tolling provisions.  *See Hardin v. Straub*, 490 U.S. 536, 543–44 (1989).  California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations.  *See* Cal. Civ. Proc. Code § 352.1(a).  The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  *See id.*  Thus, an inmate has four years to bring a section 1983 claim for damages in California, i.e., the regular two year period under section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment.

Federal law determines when a cause of action accrues and the statute of limitations begins to run in a section 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers*, 174 F.3d at 991–92.

Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back [or] the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." In California, an amended complaint relates back to the original complaint "so long as recovery is sought in both pleadings on the same general set of facts." *Smeltzley v. Nicholson Mfg. Co.*, 18 Cal. 3d 932 (1977).

### 2. Analysis

Plaintiff does not dispute that the statute of limitations would have run in connection with the events of February 16, 2009 by the time the Second Amended Complaint was filed on June 26, 2014. Instead, plaintiff argues in the alternative that (1) the original complaint in this action encompassed all of the causes of action brought in the Second Amended Complaint; (2) any new causes of action relate back to the original filing; or (3) any new causes of action are subject to equitable tolling. The Court resolves this issue in favor of plaintiff pursuant to the second argument and so need not reach his alternative arguments.

The Court is mindful of plaintiff's *pro se* status at the time he filed his initial complaint (Dkt. No. 1 ("Complaint")) in this action. Federal courts must construe *pro se* complaints liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *See Hearns*, 413 F.3d at 1043. He need not plead specific legal theories "so long as sufficient factual averments show that [he] may be entitled to some relief." *Id*. at 1041 (*citing Fontana v. Haskin*, 262 F.3d 871, 876–77 (9th Cir. 2001)). But courts should not undertake to infer another cause of action when a *pro se* complaint clearly states a claim under a specified cause of action. *See Bogovich v.*

1    *Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999).

2       In liberally construing the initial complaint, all of the four causes of action challenged on

3    statute of limitations grounds—Counts II (causing harm through CSW), III (conditions of

4    confinement), IV (retaliation), and V (conspiracy)—relate back to the original complaint to the

5    extent they remain intact in light of this Order.  Both the original complaint (including attachments

6    thereto incorporated by reference) and the operative complaint seek recovery based on the same

7    general set of facts—the February 27, 2009 cell search, use of force, CSW, and surrounding

8    circumstances, including a purported cover up.  (*See* Complaint at ¶¶ 25, 27, 30, 32, 39; *see also*

9    Complaint, Ex. A ('716 Appeal File).)

10       Thus, the motion on this ground is **DENIED**.

11    **C.     Failure to State a Claim**

12       Defendants argue Count II (maliciously and sadistically causing harm through CSW) seeks

13    relief under a non-cognizable legal theory and therefore must be dismissed.

14         **1.     Legal Framework**

15       "[T]he treatment a prisoner receives in prison and the conditions under which he is

16    confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S.

17    25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of pain . . .

18    constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v.*

19    *Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted);

20    *cf. Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (pretrial detainee protected from use of

21    excessive force by Due Process Clause of Fourteenth Amendment); *Pierce v. Multnomah Cnty.,*

22    *Oregon*, 76 F.3d 1032, 1043 (9th Cir. 1996) (Fourth Amendment protects arrestees from use of

23    excessive force until release or arraignment).  A prison official violates the Eighth Amendment

24    when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently

25    serious, *Farmer v. Brennan*, 511 U.S. 824, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298

26    (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the

27    offending conduct was wanton,  *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 297).

28       What is required to establish an unnecessary and wanton infliction of pain varies according

United States District Court
Northern District of California

20

to the nature of the alleged constitutional violation.  *Whitley*, 475 U.S. at 320.  Where an inmate alleges that the conditions of confinement inflict unnecessary suffering upon him, to establish wantonness the inmate must show that prison officials were deliberately indifferent to the inmate's suffering.  *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993); *see, e.g.*, *Farmer*, 511 U.S. at 837 (inmate safety); *Helling*, 509 U.S. at 32–33 (inmate health); *Wilson*, 501 U.S. at 302–03 (general conditions of confinement); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).

But whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is inappropriate.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  Instead, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. at 6–7; *Whitley*, 475 U.S. at 320–21; *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

## 2.     Analysis

Plaintiff argues Count II (maliciously and sadistically causing harm through CSW) can be construed as either an excessive use of force claim or a deliberate indifference to conditions of confinement claim.  (Oppo. at 19.)  However, Count III already addresses the latter claim. Therefore, Count II is either duplicative of Count III or premised upon excessive use of force.  But plaintiff has failed to present legal authority supporting his contention that a use of force claim is cognizable under the circumstances alleged, where the gravamen of the claim relates to the conditions of plaintiff's confinement during CSW.  For instance, plaintiff cites *Hope v. Pelzer* as involving similar circumstances, however the Supreme Court in that case applied the "deliberate indifference" standard appropriate to a conditions of confinement claim.  536 U.S. 730, 737–38 (2002).

In the absence of any apposite authority from plaintiff applying the "maliciously and sadistically causing harm" standard in a similar factual context, the motion on this ground is **GRANTED** and Count II is **DISMISSED**.

United States District Court
Northern District of California

21

**IV.   CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1.  Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies is:

    a.  **DENIED** as to Count III (conditions of confinement).

    b.  **GRANTED** as to Count IV (retaliation) insofar as that claim alleges retaliation through issuance of a false rules violation report.

    c.  **GRANTED** as to Count V (conspiracy) except as to Polk and Reynoso.

    d.  **GRANTED** as to Count VI (supervisor liability).

    e.  Other than as provided herein, **DENIED**.

2.  Defendants' Motion for Judgment on the Pleadings is **GRANTED** only as to Count II (maliciously and sadistically causing harm through CSW) on the ground that it fails to state a cognizable claim for relief and is otherwise **DENIED**.

This Order terminates Docket No. 196.

**IT IS SO ORDERED.**

Dated: January 30, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California